IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREWS FARMS, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>CALCOT, LTD., EADIE AND PAYNE<br><br>        Defendants.<br>_____/ | CASE NO. CV-F-07-0464 LJO DLB<br><br>**ORDER GRANTING CALCOT'S MOTION TO DISMISS; ORDER GRANTING in part and DENYING in part EADIE AND PAYNE's MOTION TO DISMISS; ORDER GRANTING PLAINTIFFS LEAVE TO AMEND** |

## I. INTRODUCTION

Pending before the Court are two motions to dismiss, filed separately by Defendant Calcot, Ltd ("Calcot"t and Defendant Eadie & Payne, LLP (sometimes referred to as "E & P" or "the CPAs"). Both defendants attack each of the eight causes of action described in the complaint. Among other arguments, Defendants' argue that the claims should be dismissed because Plaintiffs fail to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). For the reasons described below, Calcot's motion to dismiss is GRANTED in FULL, Eadie and Payne's motion to dismiss is GRANTED in part and DENIED in part, and Plaintiffs are GRANTED LEAVE TO AMEND.

///

///

## II. BACKGROUND

Introduction[1]

Calcot, in its 78th year, is a cotton marketing cooperative owned by cotton producers from California, Arizona, and Texas. Calcot is organized under Chapter 1, Division 20 of the California Food and Agriculture Code, under the "Cooperative Marketing Act." Eadie and Payne is an accounting firm which, during all time relevant, performed annual audits and independent reviews of Calcot's financial statements. Plaintiff Andrews Farms is a California general partnership, a cotton producer located in Merced County, and was a member of Calcot from 1978 through approximately 1985, 1996-1997, 1999-2000, and 2000-2001, and in those years marketed and sold cotton as a member of the cooperative by way of the Calcot Seasonal Marketing Pool ("Seasonal Pool").[2] Plaintiff Greg Palla, d.b.a. Greg Palla Farming Company ("Greg Palla") is a California sole proprietorship, a cotton producer located in Kern Country, and was a member of Calcot from 1980 to 2003, and in those years marketed and sold cotton as a member of the Calcot Seasonal Pool. Plaintiffs Andrews Farms and Greg Palla (collectively referred to as "Plaintiffs") bring this action on behalf of themselves and others similarly situation, and allege the following eight causes of action of the defendants: (1) breach of fiduciary duty; (2) constructive fraud & deceit based upon fiduciary relationship; (3) accounting; (4) fraud & deceit–intentional misrepresentation of material fact; (5) negligent misrepresentation; (6) Violation of RICO (18 U.S.C. §1962(b); (7) violation of RICO (18 U.S.C. §1962(c); and (8) violation of RICO (18 U.S.C. §1962(d)). Calcot and Eadie and Payne separately filed motions to dismiss.

Calcot and the Marketing Agreement

Calcot enters into marketing agreements with each of its members. A very important aspect of Calcot's relations with its members is to loan or advance the grower/members money when the grower

---

[1] The facts are taken from Plaintiffs' complaint. For this motion to dismiss, the Court is "required to presume all factual allegations of the complaint to be true and draw reasonable inferences in favor of the plaintiffs." *United States v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004).

[2] The Seasonal Marketing Pool is the "primary option available for use by Calcot members and wherein Calcot professional staffs make and implement all cotton marketing and sales decisions and action as the agent and fiduciary of the individual member, and where, conversely, the individual member has no say in when and how the price of cotton is fixed for cotton marketed through Calcot." (Complaint, p.4 n.3)

2

delivers his/her cotton to Calcot's warehouse. Under the advance program, as implemented by the Ma grower is paid a substantial advance against the expected sales price of each bale of cotton ("Initial Advance"). As sales of the member's cotton are "booked" and receivables collected, a series of additional payments are made to the grower ("Progress Payments") through the end of the fiscal year. At the end of the fiscal year, a final settlement is made which pays the grower for the remainder of any value not previously paid through the total of the Initial Advance and the Progress Payments.

The Marketing Agreement entered into between Calcot and the grower/members implements the advance system. The Marketing Agreement provides that "[t]itle to cotton shall pass form GROWER to CALCOT upon delivery to CALCOT" and that "CALCOT may borrow such sums of money on the security of cotton or other assets as the Board shall deem necessary or advisable." Marketing Agreement, ¶ 4. At paragraph 6, the Marketing Agreement provides

> CALCOT shall market cotton delivered by GROWER and there shall be deducted from the proceeds of sales thereof the cost of freight, insurance, storage, and any other expense incurred in handling cotton, including all costs of operating and maintaining CALCOT, together with retains for the Cotton Revolving Fund and other fund or funds as provided for in the Bylaws concerning cotton.

Calcot also employs a seasonal per unit qualified retains system. According to Calcot Bylaws, retains are intended "[t]o provide membership capital for [the Association's] corporate purposes...[and comprised of] the proceeds of products which would otherwise be payable currently to the members..." (Calcot Bylaws, section 5.01, Complaint, p.2 n. 1). In each crop year in which a grower participates as a member of Calcot, the grower pays qualified retains of $4.00 per bale of cotton delivered. This amount is reached by a "primary retain" of $3.00 per bale and an additional $1.00 in the form of a "secondary retain." These funds are taken by Calcot from the members in the crop year and returned five years later. In a typical correspondence accompanying return of seasonal per unit retains, Calcot submitted to its members that "[y]our investment in Calcot, represented by these retains, has been used for working capital and for such facilities as warehouses, offices, and cotton classing equipment. These vital elements of our total marketing program continue to work for your benefit."

The Palm Bluff Real Estate Development

Plaintiffs' causes of action arise from Calcot's Palm Bluff Real Estate Development and subsequent financing of that development. The initial Palm Bluff Development Pinedale property in Fresno was acquired by Calcot in or about 1951. Over the years, Calcot operated a cotton compress and warehouse facility on this property, leased portions to third parties, and constructed a truck scale. Around 1980, Calcot expanded the Pinedale property by acquiring adjacent properties as part of a speculative land development scheme that would demolish the warehouse facilities and replace them with non-cotton related development on the expanded 200+ acre assemblage. By 1997, Calcot has ceased its cotton warehousing operation on the Pinedale Property.

Since about 1980, Calcot has expended around $100,000,000 in developing the Palm Bluff property and carrying the property. Plaintiffs allege that "Calcot's venture into real estate development was a financial disaster, ultimately expensed to its grower members without their knowledge and content." (Complaint, ¶ 36). Plaintiffs further allege that "Calcot's venture into the real estate development market saddled growers with secret retains in excess of twenty-three million dollars ($23,000,000) utilized to pay interest costs for carrying the venture that were disguised as interest costs incurred in the handling and marketing of the members' cotton." (Complaint, ¶ 37).

"Pattern of fraudulent conduct" giving rise to the current action

Plaintiffs alleged that "the fraudulent acts committed in derivation of the fiduciary duties accompanying the principal-agent relationship created by the Marketing Agreement between plaintiffs and defendants" include, but are not limited to the following:

(A) Starting in or about 1983, one method the defendants used to finance the concealed interest costs was to include the interest costs for the Palm Bluff Development as deductions to members' interest charges from Advances when accounts were settled with members pursuant to paragraph 6. Specifically, Calcot would show interest costs for the Palm Bluff Development as "interest" on sums charged to growers as interest on funds advanced to them. Plaintiffs claim that in excess of approximately fifteen percent (15%) of the sums that members paid as interest were, in fact, interest costs for the Palm Bluff Development;

(B) Starting in or about 1983, Calcot blended in such interest costs for borrowings or other

|   |     |                                                                                     |
|---|-----|-------------------------------------------------------------------------------------|
|   |     | expenses for cotton marketing and operations. These were identified as, and listed in the Audit Report as "Other Expenses–Interest."; |
|   | (C) | Since the inception of the Palm Bluff Development project, defendants overcharged members in the Seasonal Pool in the form of increased overhead costs. The effect of this increased overhead was to reduce the amounts otherwise payable to the grower members, on a per pound basis. In a typical crop year Calcot employed the United States Postal Service to fraudulently overcharge in its (1) initial advance, (2) first progress payment, (3) second progress payment, (4) third progress payment, and (5) final settlement; |
|   | (D) | Defendants also misrepresented the use of the retained funds, which were not used for the benefit of the members. |

### III. ANALYSIS

**A.    Motion to Dismiss**

**1. Generally**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969); *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). Under the basic rule, a motion to dismiss for failure to state a claim should not be granted unless "...it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Yamaguchi v. U.S. Dept. Of the Air Force*, 109 F.3d 1475, 1481 (9th. Cir. 1997). Although courts assume the facts alleged as true, courts do not "assume the truth of legal conclusions merely because they are case in the form of factual allegation." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *McClinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.

1988)(citation omitted).

There are liberal rules requiring leave to amend. See *Gilligan v. Jamco Develop. Corp*, 108 F.3d 246, 249 (9th Cir. 1997). A court should grant leave to amend unless it is clear that the complaint cannot be cured by the allegations of different facts. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

### 2. Facts not asserted in the Complaint

In its motion to dismiss, Calcot asserts facts outside of the complaint in defense, or in support of its arguments to dismiss. "Evidence outside the pleadings...cannot normally be considered in deciding a 12(b)(6) motion." *Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993). That is because a motion under 12(b)(6) tests the sufficiency of the plaintiffs' complaint based upon the face of the pleadings. "Unless the court converts the Rule 12(b)(6) motion into a summary judgment motion [] or the defense is apparent from matter of which a court may take judicial notice[], the court cannot consider material outside the complaint (e.g. facts presented in briefs, affidavits, or discovery materials." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Accordingly, the Court will not consider those facts presented in the brief and not included in the complaint, nor will the Court consider arguments based on those facts of which it can not take judicial notice.

## B.   Heightened Pleading Requirement under Rule 9(b)

### 1.   Generally

Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." "Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty Hosp. v. Antelope Valley Dist*., 940 F.2d 397, 405 (9th Cir. 1991). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). (citation and internal quotations omitted). A plaintiff alleging fraud "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture, Inc*., 806 F.2d 1393,

1402 (9th Cir. 1986). Thus, "[m]ere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989). "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee*, 236 F.3d at 1018.

### 2. Heightened Standard for Complaints "grounded in fraud"

Calcot argues that all of Plaintiffs' causes of action is subject to Rule 9(b) heightened pleading requirements, including those causes of action which do not have an element of fraud. In making this assertion, Calcot relies on *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003), where the Ninth Circuit ruled:

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claims as a whole must satisfy the particularity requirement of Rule 9(b). *Id.* at 1103-04.

In cases, " where fraud in not an essential element of a claim, only allegations ("averments") of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1105. Further, the heightened pleading standard is applied to both state and federal claims. *Id.* Thus, "[w]here averments of fraud are made in a claim in which fraud is not an element...the proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Id.*

The Court finds this complaint "sounds in fraud." All causes of action in this complaint are based are a pattern of fraudulent activity, as alleged by the Plaintiffs in their complaint. Plaintiffs rely on this pattern to form the basis of the complaint Plaintiffs introduce and repeatedly describe the activity upon which all causes of action are based in the Complaint as "Defendants' Pattern of Fraudulent Conduct." (Complaint, ¶¶38-45). While specific instances of conduct are described in the causes of action, those acts are notably part of a unified pattern of conduct and are allegedly fraudulent. Having

employed a "wholesale adoption" of allegations of a course of fraudulent conduct, "all of plaintiffs' claims, whether including an element of fraud or not, must satisfy the heightened pleading standard set out by Rule 9(b)." *In re Daou Systems, Inc.*, 411 F.3d 1106, 1028 (9th Cir. 2005). To be consistent with the *Vess* ruling, t he Court will consider each cause of action containing an element of fraud under the heightened pleading standard. For those causes of action which do not include an element of fraud, the Court will consider the allegations of fraud under the heightened standard and/or disregard the allegations of fraud and consider whether Plaintiffs have stated a claim sufficient to withstand the current motions.

**C.     The RICO Claims**

Plaintiffs alleged a violation of 18 U.S.C. §1962(b), 18 U.S.C. §1962(c), and 18 U.S.C. §1962(d) as the sixth through eighth causes of action. In opposition to Calcot's motion to dismiss, Plaintiffs first concede that Calcot correctly points out that the corporate entity Calcot cannot be the "person" or "enterprise" for purposes of 18 U.S.C. §1962 (c). Plaintiffs seek leave to amend their complaint to specifically name one or more officers of Calcot as defendants in order to conform the complaint to the requirements for pleading a RICO claim. Pl. Opp. Calcot's Mot. Dismiss, 19:15-19. Plaintiffs further concede that Calcot is correct in noting that the complaint does not currently state a cause of action under 18 U.S.C. §1962(a). Plaintiffs again seek leave to amend the complaint to include this new cause of action. Pl. Opp. Calcot's Mot. Dismiss, 19-20. Plaintiffs contend that the other RICO claims are plead sufficiently and with particularity.

As a threshold matter, Federal Rule of Civil Procedure 9(b) applies to RICO Fraud allegations, including mail fraud. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir.2004). Rule 9(b) requires that the pleader state the 'time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentation." *Edwards*, 356 F.3d. 1058, 1066; *Wagh v. Metris Direct, Inc.*, 363 F.3d 821(9th Cir. 2003); *Flores v. Emerich & Fike*, 416 F.Supp. 2d 885, 911 (E.D. Cal. 2006).

In the complaint, Plaintiffs identify  22 specific instances in which

> Defendants generated and caused to be mailed via United States Postal Service [a] correspondence...reflecting, comprising and in furtherance of Defendants' scheme or artifice to defraud plaintiffs by concealing and not disclosing, despite a duty to disclose, that the final price per pound of cotton marketed or sold under the terms of the Marketing Agreement, did not reflect the secret retains used to pay interest costs arising from the Palm Bluff Real Estate Development. (Complaint, ¶¶ 95 (a)-(v)).

As set out *supra*, a plaintiff alleging fraud "must state the time, place, and specific content of the false representations *as well as the identities of the parties to the misrepresentation*." *Schreiber Distrib. Co. v. Serv-Well Furniture, Inc.*, 806 F.2d 1393, 1402 (9th Cir. 1986) (emphasis added). In discussing Rule 9(b) requirements in the corporate fraud context, the Ninth Circuit has explained:

> [A]llegations of fraud based on information and belief usually do not satisfy the particularity requirement under rule 9(b). However, the rule may be relaxed as to the matters within the opposing party's knowledge. For example, in cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts. In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded. Instances of corporate fraud may also make it difficult to attribute particular fraudulent conduct to each defendant as an individual. To overcome such difficulties in cases of corporate fraud, the allegations should include the misrepresentations themselves with particularity and, *where possible, the roles of the individual defendants in the misrepresentations* (Internal citations omitted).

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (emphasis added)(later noting that "our discussion of...10(b)...claim applies to the...RICO claim as well).

While the conduct alleged states the time, place and content of the false representations, the identities of the parties are not alleged with clarity or specificity. Plaintiffs assert the sixth, seventh, and eighth causes of action against "all defendants." The "defendants" identified in the complaint are: (1) Calcot, (2) Eadie and Payne and (3) Does 1-50. As is made clear from the case law, a civil RICO claim must attribute specific conduct to individual defendant. The complaint does not specify the conduct of each defendant, nor does it make clear what conduct is attributable to Calcot, Eadie and Payne, and/or the unnamed "conspirators." Moreover, Plaintiffs have already admitted that their seventh cause of action is insufficient, as they have not plead specific officers of Calcot as defendants. Plaintiffs have further asked for leave to amend to specifically name those individuals. Implicitly, Plaintiffs have expressed that it is possible to identify individual defendants and specifically plead the individual defendant's role in the conduct. Accordingly, both motions to dismiss are GRANTED with LEAVE TO AMEND these claims. Plaintiffs are GRANTED leave to include a claim under 18 U.S.C. §1962(a).

**D.     Breach of Fiduciary Duty**

The first claim is for breach of fiduciary duty. Plaintiffs incorporate paragraphs 1 through 45, including the section describing "Defendant's Pattern of Fraudulent Conduct," to aver that "under the Terms of the Marketing Agreement and as a matter of law, defendants assumed the role of agents and fiduciaries responsible for fairly managing the monies due plaintiffs under the terms of the Marketing Agreement in connection with the marketing and sales of grower members' cotton." Complaint, ¶ 52. Plaintiffs further aver that the "defendants, and each of them, breached their fiduciary duties owed to plaintiffs by failing to fully disclose and properly account for monies due Plaintiffs under terms of the Marketing Agreement" and "employing the above-referenced fraudulent schemes to divert monies from plaintiffs." Complaint, ¶ 53. Finally, Plaintiffs alleged that the "conduct of defendants, and each of them, was an intentional misrepresentation of deceit or concealment of material facts known to defendants." Complaint, ¶ 55.

While a claim of breach of fiduciary duty does not necessarily include an element of fraud, Plaintiffs assert allegations of fraudulent conduct in support of this claim. If the court were to ignore the allegations of fraud, Plaintiffs first cause of action would fail to state a claim under Fed. R. Civ. P. 8 standard, as there is no conduct asserted that is non-fraudulent. As such, this claim must satisfy Rule 9(b).

Calcot asserts that the complaint does not properly allege a fiduciary duty between Calcot and its growers. In support of this they offer three reasons this Court should dismiss this complaint. First, nothing in the member agreement establishes the existence of a fiduciary relationship. The absence of a basis for the conclusion of an agent/principal relationship renders the complaint defective under Rule 8. Second, nowhere in the complaint do plaintiffs any specific individuals who performed acts that were alleged breaches of fiduciary duty. Finally, since the alleged fiduciary duty is a duty alleged to arise and exist under the Member Agreement, and Plaintiffs have not charged Calcot with breaching the contract, it is not possible for Calcot to have breached a duty under a contract it has not breached.

Eadie and Payne also argues that Plaintiffs have failed to state a claim establishing a fiduciary duty against them. Eadie and Payne correctly points out that the Marketing Agreement relied upon in the statement of the claim does not identify Eadie and Payne as a party. Finally, Eadie and Payne asserts

that no fiduciary relationship exists between Eadie and Payne and Plaintiffs, because an auditor retained to conduct an annual audit and to further an opinion for no particular purpose generally undertakes no duty to third parties. *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 393 (Cal. 1992).

In response, Plaintiffs argue that Calcot was the fiduciary of Plaintiffs both (1) as a matter of law and (2) from the membership agreement. Complaint ¶ 31. Calcot's status as a fiduciary of the members originates in its existence under the cooperative marketing statutes. Under California law, this fiduciary relationship between a cooperative agricultural marketing association and its constituent members is so established that even the individual directors of the cooperative association are deemed to be fiduciaries of the members. Plaintiff Opp. To Calcot, p.9 (citing *Olson v. Biola Co-op. Raisin Grower Ass'n*, 33 Cal.2d 664 (1949). Regarding Eadie and Payne, Plaintiffs argue that because Calcot "standing in the members' shoes, the doctrine of equitable subrogation permits plaintiffs to assert a breach of fiduciary duty by Eadie and Payne." Pl. Opp. E & P. Mot. Dismiss, 5:16-17.

The Court need not resolve all issues raised by this claim. The first cause of action fails, because it does not meet the standards of Rule 9. Plaintiffs allege that all defendants participated in fraudulent activity, but have failed to identify the specific conduct of each defendant. It is unclear which defendant participated in what conduct under this cause of action. As Eadie and Payne conclude

> Nowhere in their Complaint or Opposition do Plaintiffs set forth facts regarding <u>specific</u> representations made by Eadie and Payne to Plaintiffs, <u>specific</u> events which occurred giving rise to this matter, <u>specific</u> individuals from Eadie and Payne who participated in said events, or <u>specific</u> dates. Rather, Plaintiffs' Complaint generally concludes that Eadie and Payne concealed information or misrepresented that they were going to apply general auditing standards. These general allegations are insufficient and thus this Court should dismiss Plaintiff' Complaint against Eadie and Payne.

E & P. Reply, 2:3-9 (emphasis in original). This Court agrees that the complaint does not attribute specific activity to Eadie and Payne, with the exception of the fifth cause of action, as described more fully below. The way it is written, the complaint is not specific about the alleged conduct attributable to each party; namely, Eadie and Payne, Calcot, and the unnamed and unidentified defendants. While this cause of action is against all defendants, the complaint alleges activities under the marketing agreement, to which only some defendants a party. It is not for this Court or the defendants to decide what activity they should defend against.

The policy behind Rule 9(b) is clear. The heightened pleading requirements are to give defendants notice of the specific conduct against which they must defend and to prohibit plaintiffs from imposing upon the court and the parties enormous costs absent some factual basis. "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct." *Bly-Magee*, 236 F.3d at 1018. In this cause of action, it is unclear to both Eadie and Payne and Calcot, as well as this Court, what conduct is attributable to them. Accordingly, the motions to dismiss are GRANTED with LEAVE TO AMEND.

**E. Fraud Claims**

The second and fourth causes of action include elements of fraud. Plaintiffs have again plead these causes of action against all defendants. As discussed above, Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmtv Hosp. v. Antelope Valley Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). Thus, to satisfy the heightened pleading standard, Plaintiffs must allege the role of each defendant. Consistent with the discussion above, the complaint fails to allege the specific role of each defendant in these causes of action. Accordingly, the motions to dismiss are GRANTED with LEAVE TO AMEND.

**F.   Accounting**

The third causes of action is for Accounting. The third cause of action is against all defendants. Plaintiffs claim that they "are entitled to an accounting of all money and property received by or entrusted to defendants for the benefit of plaintiffs, but wrongfully diverted from plaintiffs in the form of secret real estate retains." Complaint, ¶ 62. An accounting is an action in equity when the plaintiff seeks an unliquidated amount that cannot be determined or fixed without an accounting. *St James Church v. Superior Court*, 135 Cal. App. 2d 352, 359 (1955).

> If a complaint sets forth all the facts necessary for the calculation of an account between the parties, recovery may be had in an action at law. A suit for accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law. An accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a certain sum. *Id. (*Internal citations and quotations omitted).

///

Calcot alleges that Plaintiffs have fixed a sum of $54,127,419. In making this argument, Calcot acknowledges that this sum "is stated without basis." Calcot's Mot. Dismiss, 8:25.[3] Plaintiffs argue that they have given an estimated figure. The complaint alleges that "over the years [Calcot] gained $23,586,257 from growers in secret real estate development retains without being obligated to return the money. The impact on growers...is in excess of $54,127,419." Complaint, ¶ 4. The increase in the sum is explained as interest, which although variable, is ascertainable.

Although unexplained, Plaintiffs have affixed a sum in the complaint with specificity. The complaint does allege that plaintiffs do not have access to the books, which would support a need for an accounting; however, the Plaintiffs do not assert an estimated range or some sort of average. Instead, they affix the number with certainty, down to the dollar. Therefore, Calcot's motion to dismiss the third cause of action is GRANTED with LEAVE TO AMEND.

Eadie and Payne argue the third cause of action must fail as alleged against them because Plaintiffs failed to provide a statement that some balance is due to them by Eadie and Payne. *Brea v. McGlashan*, 3 Cal. App. 2d 454, 460 (1934). Plaintiffs do not address this argument in their opposition. Having not shown that Eadie and Payne owe Plaintiffs some balance, Eadie and Payne's motion to dismiss the third cause of action is GRANTED.

**G. Negligent Misrepresentation**

The fifth cause of action for Negligent Misrepresentation is against Eadie and Payne only. In order to prove negligent misrepresentation, Plaintiffs must assert: (1) a false statement of material fact that the defendant honestly believes to be true, but made without reasonable grounds for such belief; (2) made with the intent to induce reliance; (3) reasonable reliance on the statement; and (4) proximately caused damages. *Century Surety Co. v. Crosby Ins. Inc.*, 124 Cal. App. 4th 116, 129 (2005). Negligent misrepresentation claims are subject to the heightened pleading requirements of Rule 9(b). *Neilson v. Union Bank*, 209 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (noting that, under California law, negligent misrepresentation is a form of deceit).

---

[3] In its reply, Calcot further alleges that this claim fails because Plaintiffs have not asserted that there are inadequate legal remedies. Having not raised this issue in their original motion, Plaintiffs did not have a chance to respond to this assertion. As such, the Court will not consider it.

1    Plaintiffs allege that Eadie and Payne "performed audits of the books and records of Calcot for
2 all years relevant." Complaint, ¶ 78. Attached to the complaint is a copy of an audit opinion performed
3 by Eadie and Payne dated September 25, 2000, entitled "Independent Auditor's Report." The CPA's
4 represented that they performed an independent audit of Calcot and stated, "[i]n our opinion, the
5 financial statements referred to above present fairly, in all material respects, the financial position of
6 Calcot...ended in conformity with accounting principles generally accepted in the United States."
7 Complaint, ¶ 79. Plaintiffs aver that the representation was false, because the financial statements and
8 audit reports concealed the fact that the interest costs were being "irretrievably deducted from the
9 plaintiffs' final cotton settlements." Complaint, ¶ 80. Plaintiffs made further detailed allegations
10 against Eadie and Payne in ¶¶ 81-88 of the Complaint.

11    Eadie and Payne argues (1) Plaintiffs did not plead negligent misrepresentation with adequate
12 specificity; (2) Eadie and Payne did not owe a duty to Plaintiffs, as Plaintiffs did not justifiably rely on
13 said statements; and (3) there is no proximately caused harm. For the reasons described below, these
14 arguments fail.

15    Eadie and Payne correctly asserts that Plaintiffs must plead this cause of action with particularity.
16 This cause of action, unlike all others, have alleged with particularity the allegations necessary and
17 conforms to Rule 9(b) requirements. From the complaint, the alleged misconduct is clear, the parties
18 are clear, and the time the conduct occurred is clear. Therefore, this cause of action satisfies the pleading
19 standard.

20    Under the basic rule, a motion to dismiss for failure to state a claim should not be granted unless
21 "...it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would
22 entitle him to relief." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), *citing Conley v. Gibson*, 355
23 U.S. 41, 45-46 (1957); *Yamaguchi v. U.S. Dept. Of the Air Force*, 109 F.3d 1475, 1481 (9th. Cir. 1997).
24 Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that
25 could be proven consistent with the allegations." *McClinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th
26 Cir. 1988)(citation omitted). Here, Plaintiffs have shown an audit report by Eadie and Payne which
27 concludes that the financial statements of Calcot were in all aspects in conformity with the law. If that
28 were false, as Plaintiffs assert, then there are reasonable facts Plaintiffs could assert to prove duty,

reliance and damages. As grower-members, they reasonably could have made a decision to continue an association with Calcot in reliance of the auditing. Accepting the allegations that Calcot did conceal the interest and deprive members of monies owed, that is a harm that is conceivably proximately caused. Therefore, this cause of action survives Rule 12(b)(6) scrutiny. Accordingly, Eadie and Payne's motion to dismiss Plaintiffs' fifth cause of action is DENIED.

### V. Conclusion

For the foregoing reasons, the Court ORDERS:

    (I)    Calcot's motion to dismiss is GRANTED in FULL;

    (II)    Eadie and Payne's motion to dismiss is GRANTED in part and DENIED in part;

    (III)    Plaintiffs are GRANTED LEAVE TO AMEND causes of action 1-4 and 6-8; and

    (IV)    Plaintiffs are GRANTED LEAVE to include a cause of action under 18 U.S.C. §1962(a).

IT IS SO ORDERED.

**Dated:   June 8, 2007**                    /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE