IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREWS FARMS, et al., | CASE NO. CV-F-07-0464 LJO DLB |
| Plaintiffs, | **ORDER ON DEFENDANT CALCOT'S MOTION TO DISMISS** |
| vs. | |
| CALCOT, LTD., EADIE AND PAYNE | |
| Defendants. | |

On August 15, 2007, Defendant Calcot, Ltd. and Robert W. Norris (collectively "Calcot") filed a motion to dismiss plaintiffs' first amended complaint on the grounds that the Complaint fails to state grounds upon which relief can be granted, the complaint is uncertain and fails to meet the "plausibility" standard of *Bell Atlantic v. Twombly*, - - U.S. - -, 127 S.Ct 1955 (2007). Plaintiffs Andrews Farms and Greg Palla filed an opposition on September 18, 2007. Defendants filed a reply on September 28, 2007. The Court took the motion under submission without oral argument pursuant to Local Rule 78-230(h). Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Court previously summarized the factual and procedural background of this case in Calcot's prior motion to dismiss. (Doc. 29, p. 2-5.) The Court summarizes the relevant facts for this motion.

Calcot is organized under Chapter 1, Division 20 of the California Food and Agriculture Code,

1

under the "Cooperative Marketing Act." Cotton farmer members join Calcot to pool their marketing efforts. Plaintiff Andrews Farms and plaintiff Greg Palla, d.b.a. Greg Palla Farming Company are cotton producers, and were members of Calcot. Plaintiffs allege that Calcot mismanaged the farmers' money and did not deal openly and honestly with members in obtaining money in relation to a real estate development called the Palm Bluffs Real Estate Development Project. Plaintiffs allege that, without their knowledge, the farmers' funds were retained by Calcot to cover the interest costs of the Palm Bluffs project, in the amount of $23 million.

Plaintiffs allege ten claims for relief. Defendant Calcot challenges the following claims:

1. Fraud
2. Breach of Fiduciary Duty
3. Constructive Fraud & Deceit based upon Fiduciary Relationship
4. Accounting
5. Breach of Contract
8. Violation of RICO, 18 U.S.C. §1962(b)
9. Violation of RICO, 18 U.S.C. §1962(a)
10. Violation of RICO, 18 U.S.C. §1962( c)

## SUMMARY OF THE PARTIES' ARGUMENTS

**A.  Calcot's position**

The First Amended Complaint ("FAC") alleges that Calcot improperly "blended" approximately $23 million in interest costs related to the Palm Bluffs development with Calcot's other corporate interest costs and charged its members the carry costs of the Palm Bluffs project.

**1.  Judicial notice**

Calcot asks the Court to take judicial notice of exhibits attached to the Declaration of Robert Norris, which includes Calcots' By-laws, the Palm Bluffs Development Status Update and related appendices.

**2.  Heightened Pleading Standard**

Calcot argues that each of the causes of action is subject to Rule 9(b) heightened pleading standard because all of the claims sound in "fraud." Calcot argues the recent Supreme Court case of *Bell*

*Atlantic Corp v. Twombly,* - U.S. -, 127 S.Ct 1955 (2007) announced a new "plausibility" standard in pleading which overruled the "beyond doubt" rule. Plaintiff fails to meet the heightened particularity standard of Rule 9 and the *Twombly* plausibility standard because plaintiffs fail to show any legal duty to specifically or separately account for or disclose the alleged "secret real estate development retains."

### 3.     First Claim for Fraud

Defendants recount multiple pleading deficiencies. Plaintiffs fail to identify any affirmative misrepresentation, but merely allege that Calcot made fraudulent statements without alleging what statements were made. (FAC ¶53, 30.) Plaintiffs contend that the Palm Bluff interest expense was concealed, but fail to identify any obligation to separately identify interest costs related to the Palm Bluffs development. Plaintiffs do not allege fraudulent concealment of interest costs in the Development Status Update report, because the accounting has been performed correctly.

Plaintiffs do not allege fraudulent concealment arising under the Marketing Agreement. The Marketing agreement permits borrowing money and purchase property, which is what Calcot is alleged to have done.

Plaintiffs fail to allege that Calcot concealed information which it had a duty to disclose in its correspondence regarding advance payments, progress payments or final settlement. They fail to plead any obligation in contract or law which required itemized expenses related to the Palm Bluffs Development in letters to growers.

Plaintiffs failed to allege that Calcot fraudulently accounted for the Palm Bluffs Development. They do not allege that Calcot failed to comply with GAAP.

Plaintiffs do not identify who made any material omission. Plaintiff have not properly alleged that Calcot had an intent to deceive.

Plaintiffs have not properly pled that they relied on the alleged misrepresentations or that they were damaged. Corp. Code 1501(a) does not create a duty to plaintiff because Food and Agr. Code 54040 states that general corporation law does not apply to agricultural cooperatives.

Plaintiffs are required but have not alleged the statute of limitations has been tolled for the fraud and RICO claims. *Cervantes v. City of San Diego*, 5 F.3d 11273, 1275 (9th Cir. 1993). They did not allege when they learned of the "imputed" interest and have not alleged why they did not learn of it

sooner.

### 4. Second Claim - Breach of Fiduciary Duty

Plaintiffs cannot establish a fiduciary duty. They cite Corp. Code §14550-14551 and 7 U.S.C. §729, but these statutes impose no duty - to account for or disclose the "secret real estate development retains."

Plaintiffs contend that Calcot breached its fiduciary duty to plaintiffs by failing to fully and truthfully disclose all deductions pursuant to the Marketing Agreement (FAC ¶36.)

### 5. Third Claim - Constructive Fraud

Civil Code §1573 requires that for constructive fraud, a plaintiff must plead existence of a fiduciary duty. Plaintiffs' cannot establish a fiduciary duty or that Calcot gained an "advantage" over plaintiffs.

### 6. Fourth Claim - For Accounting

Plaintiffs other claims seek the legal remedy of damages. It is fundamental that an accounting will not lie where there is an adequate remedy at law. *St. James Church v. Superior Court*, 135 Cal.App.2d 352, 259 (1955). In the prior complaint, plaintiff alleged a "sum certain" for damages, but now allege an "estimate." Plaintiffs accounting claims fails to meet the *Twombly* plausibility standard because the remainder of the complaint contradicts a predicate for an accounting (inadequacy of legal remedies), and because plaintiff fail to show any legal duty to specifically of separately account for the alleged "secret real estate development retains."

### 7. Fifth Claim - Breach of Contract

The FAC impermissibly exceeds the scope granted by this Court to amend the complaint by adding a breach of contract claims as a new fifth cause of action. (FAC ¶86-92.) The Order states that plaintiff can amend claims 1-4 and 6-8 and may add a claim under 18 U.S.C. 1962(a).

Andrews Farms is barred from a breach of contract claim because it stopped being a member of Calcot in 2001, more than four years ago. (FAC 4:19-5:1).

The claim also fails because plaintiffs did not allege mitigation of damages.

### 8. RICO claims - 8th, 9th and 10th Claims

Plaintiffs have not properly alleged a pattern of racketeering activity. Plaintiffs have not plead

the predicate acts with particularity. *Occupational Urgent Care,* 711 F. Supp. At 1020-21. Plaintiffs have not alleged how Calcot formed a scheme or artifice to defraud. Plaintiffs have not alleged how the mailed progress payments and final settlement payments furthered the scheme to defraud. Plaintiff must allege with specificity the false statements allegedly contained in these letters. Plaintiff have alleged any specific use of the US wires to support a single wire fraud predicate act.

Plaintiffs have not alleged a violation of 18 U.S.C. §1962(a) because acquisition and reinvestment of the proceeds of racketeering activity in the general affairs of an enterprise does not qualify as an investment injury. *Wagh v. Metris Deist.,* 363 F.3d 821, 829 (9th Cir. 2003).

Plaintiffs have not properly alleged a violation of 18 U.S.C. §1962(b). Plaintiffs must allege that (1) defendant's activity led to its control of a RICO enterprise, and (2) and the control resulted in an injury to plaintiff. Plaintiffs have not alleged who owned or controlled Calcot as a result of the RICO enterprise.

Plaintiffs continue to make vague and conclusory allegations that defendant and the "conspirators" were person within the meaning of RICO. 18 U.S.C. §1961.

Plaintiff fail to properly allege a violation of 18 U.S.C. §1962( c). Plaintiff added Mr. Norris as a defendant and added that he was an employee during relevant times. Plaintiffs fail to allege a specific nexus between the control of the enterprise and the racketeering activity. *Sea-Lan, Inc. v. Atlanta Pac.*, 507 F.Supp.2d 1048, 1055 (D. Ha. 1999). Plaintiff does not set forth how Norris conducted a pattern of racketeering activity.

**B.    Plaintiffs' Position**

Plaintiffs contend defendants misconstrue *Twombly,* which the S.Ct subsequently confirmed in *Erickson v. Pardus*, that pleading factual detail is not required to survive a motion to dismiss.

**1.    Plaintiffs' Fraud Allegations**

Plaintiffs alleged three separate fraud claims: the first is traditional fraud and deceit and the second and third claims are for breach of fiduciary duty and constructive fraud. Plaintiffs argue that they have alleged detailed facts, and then cite to the allegations (discussed below). Plaintiff argues that it has alleged the who, what, when, where of the fraud. In *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), the court held that a complaint meets the particularity requirement of Rule 9(b) when read as a whole

5

1  it identifies the circumstances of the alleged fraud so that defendants can prepare an adequate answer.
2  Plaintiffs have not alleged who made the alleged omission because plaintiffs are not required to plead
3  facts known only to defendants.

4  Plaintiff alleged that Calcot had an intent to deceive - "the misrepresentations were made with
5  the intent to deceive and conceal the losses of the Palm Bluffs Development." Plaintiffs have allege
6  reliance. "Plaintiffs reasonably relied on said misrepresentations." FAC ¶62. Plaintiff have plead
7  damages "according to proof" which is sufficient. *Blair v. IRS*, 304 F.3d 861, 866 (9th Cir. 2002).

8  Failing to distribute the annual report constitutes fraud because this is concealment by Calcot,
9  plaintiffs' fiduciary. *Ball v. Posey* (1986) 176 Cal.App.3d 1209, 1214.

10  Plaintiffs have plead fraudulent concealment. A fiduciary has a duty to disclose and plaintiffs
11  have alleged that Calcot was plaintiffs' fiduciary. Calcot was a fiduciary by virtue of its handling of
12  plaintiffs' monies and originates in its existence under the cooperative marketing statutes. *Bogardus v.*
13  *Santa Ana W.G. Assn*, 41 Cal.App.2d (1940). Federal courts have held that a cooperative agricultural
14  marketing association is one of "trust." *California &Hawaiian S.R. Corp. V. Commissioner*, 163 F.2d
15  531, 535 (9th Cir. 1947).

16  Plaintiff alleges that Calcot breached its duties by failing to disclose and properly account for
17  monies due plaintiffs. (FAC ¶71)

18  **2.    Plaintiffs may seek an Accounting**

19  Plaintiffs have alleged that funds entrusted to their fiduciary were not properly accounted for.
20  *Otto v. Niles*, 106 F.3d 1456, 1462 (9th Cir. 1997) (basic principles of the law of fiduciaries place the
21  burden to render an accounting on the fiduciary once the principle has shown that funds have been
22  entrusted to the fiduciary and not paid over.)

23  **3.    Breach of Contract**

24  There was no prohibition against plaintiffs adding this claim, particularly at this early stage of
25  the litigation. Defendants legal status as plaintiffs' fiduciary moots their arguments that their "breach
26  of contract claim is barred by the statute of limitations."

27  **4.    RICO**

28  General allegations of the formation of a scheme or artifice to defraud are sufficient and only the

"fraud" itself of the RICO claim requires particularized allegations. *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007). Plaintiffs alleged the scheme or artifice generally, (FAC ¶139), and intent is plead generally (FAC ¶236).

## ANALYSIS AND DISCUSSION

Calcot moves to dismiss plaintiff's claims in the first through fifth (1- 5) and the eighth through tenth (8 - 10) claims for relief. Calcot argues that the FAC fails to meet the "plausibility" standard of *Bell Atlantic v. Twombly*, - U.S. -, 127 S.Ct 1955 (2007) and lacks "particularity" under Rule 9.

**A.     Judicial Notice**

As a precursor to nearly all of defendants's arguments is its request for this Court to take judicial notice of two documents. The first is the "Palm Bluff Development Status Update," attached as Exh. A to the Norris Declaration. Calcot has also asked the Court to take judicial notice of Calcot's By-laws.

In its motion to dismiss, Calcot supports its arguments with facts outside of the complaint. "Evidence outside the pleadings...cannot normally be considered in deciding a 12(b)(6) motion." *Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993). A motion under 12(b)(6) tests the sufficiency of the plaintiffs' complaint based upon the face of the pleadings. "Unless the court converts the Rule 12(b)(6) motion into a summary judgment motion [] or the defense is apparent from matter of which a court may take judicial notice[], the court cannot consider material outside the complaint (e.g. facts presented in briefs, affidavits, or discovery materials." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

A defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (*overruled on other grounds in Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)). The court need not accept as true allegations that contradict facts which may be judicially noticed by the court. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987), *cert. denied*, 486 U.S. 1040 1988).

Calcot argues that the Palm Bluff Development Status Update and Calcot's By-laws were or should have been attached to the complaint. Calcot cites to various portions of both documents to contradict allegations in the FAC.

The Court is limited on the facts upon which it may judicially notice. The Court may take judicial notice of any fact which is "...not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

The substance of the two documents do not fall within the limitations of Fed.R.Evid. 201. The Court cannot take judicial notice of the truth of the matter asserted within these documents. The Ninth Circuit has held that in securities fraud cases, the court may take judicial notice of public documents filed with the SEC to determine what statements the documents contain, but not to prove the truth of their contents. *In re Silicon Graphics Inc. Secur. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). The Court may not take judicial notice of the truth of the statements made in the documents..

**B.    *Bell Atlantic v. Twombly* "Plausibility" Standard**

Defendants argue that the entirety of the FAC fails because it does not comply with the heightened pleading standard as set forth in *Bell Atlantic v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The Supreme Court recently ruled on the Fed.R.Civ.P. 8(a)(2) requirement that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in an antitrust action. *Bell Atlantic v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court held that the purpose of Rule 8(a)(2) was to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In *Twombly*, the Supreme Court abrogated the 12(b)(6) "no set of facts" standard under *Conley*. The Court stated that:

> This [*Conley*] "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown on the face of the pleadings .... On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of facts" to support recovery.

127 S.Ct. at 1968, citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

8

The *Twombly* court then held:

> "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Twombly*, thus, requires that the complaint contain factual allegations sufficient, "to raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965-66, 1974. However, "a complaint attacked by a rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Id.* at 1964. Rather it must plead, "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Thus, a 12(b)(6) motion to dismiss should be granted when plaintiffs fail to "nudge [ ] their claims across the line from conceivable to plausible." Id.

Two weeks later, the Court clarified that *Twombly* did not signal a switch to fact-pleading in the federal courts. *See Erickson v. Pardus*, - U.S. -, 127 S.Ct. 2197 (2007). To the contrary, *Erickson* reaffirmed that under Rule 8 "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" 127 S.Ct. at 2200, quoting *Twombly*, 127 S.Ct. at 1964. In *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), the Court reaffirmed that Rule 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 2200 (internal quotation marks omitted) (concluding that the petitioner had stated an Eighth Amendment claim where he alleged that prison officials had endangered his life by removing him from hepatitis C medication shortly after he began a year-long treatment regimen, that he was still in need of the treatment, and that prison officials continued to deny him treatment). Thus, neither Supreme Court case heightened the Rule 8 pleading standard. Allegations of a claim must be "plausible" for the legal theory.

**C.   Fraud Claim**

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated "with particularity." Fed.R.Civ.P. 9(b). By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in

9

sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (the particularity requirement is satisfied if the pleading "identifies the circumstances constituting fraud (or mistake) so that the defendant can prepare an adequate answer from the allegations.") *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud (or mistake) ... so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985).

Under California law, the elements of actual fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, that is, to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court (Rykoff-Sexton, Inc.),* 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996).

### 1.   Misrepresentations/Concealment

Plaintiffs allege affirmative misrepresentation and concealment. Defendant argues that plaintiffs fail to adequately allege the "who, what, where and how" of the fraud.

Every transaction alleged to be fraudulent does not have to be detailed in the complaint. In *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir 1997), cited by plaintiffs, plaintiff alleged that company substantially overstated its revenues by reporting consignment transactions as sales which was false and misleading. Defendant moved to dismiss claiming that allegations of overstatement are not specific enough, because "the Complaint does not allege the time, customer, amount, or other circumstances, of a single wrongful transaction of any type." The Court denied the motion to dismiss finding that, "It is not fatal to the complaint that it does not describe in detail a single specific transaction (i.e. shipment)". *Id.* at 627. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. *Cooper v. Pickett,* 137 F.3d at 625.

In this case, plaintiffs identify the who, what, where and how of the fraudulent activities. Plaintiff identifies that in "Initial Advances," "First Progress Payment" through the Third Progress

10

Payment and the "Final Settlement", Calcot represented and/or failed to disclose the deductions for the interests costs for the Palm Bluffs Development. (See e.g., FAC ¶44-46.) The complaint identifies who (the officers and directors of Calcot), what (the specific acts of representations of interest costs), when (every year since 1983 in the specifically identified correspondence), and where (the documents in which the representations were made or not made). Here, the allegations are sufficiently pled such that defendants know that it is the interest costs in the Palm Bluffs Development that is being challenged (as opposed to any other financial item), during what years, and how the "wrong" information was disclosed to plaintiffs. In *Cooper*, the Court held that "the complaint meets the particularity requirement of Rule 9(b) . . .[when] the complaint 'identifies the circumstances of the alleged fraud so that defendants can prepare an adequate answer.'" *Id.* at 625.

Defendants here also claim the allegations of misrepresentation are not pled with specificity because plaintiffs do not allege any obligation to "separately identify interest costs" related to Palm Bluffs or that its accounting failed to comply with Generally Accepted Accounting Principles. Plaintiff is generally not required to plead facts in the complaint to negate anticipated affirmative defenses. *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).

Plaintiffs, however, allege that the Marketing Agreement permits Calcot to deduct from the growers' proceeds, amounts incurred for "handling cotton." (See e.g., FAC ¶29-30.) Plaintiffs allege that Calcot represents to its members that proceeds will only be reduced by legitimate costs as are necessary for the continued operations of the marketing function of Calcot. (See e.g., FAC ¶30.) Plaintiffs' position is the Palm Bluffs Development was not necessary to the marketing function of Calcot and by representing that deductions and failing to disclose the interest costs, Calcot engaged in fraudulent activities. (FAC ¶37: "Calcot's venture into real estate development was a financial disaster, ultimately expensesd to its grower memebers without their knowledge or consent.") Plaintiff allege that Calcot misrepresented the use of the deductions from the grower retains: "[y]our investment in Calcot, represented by these retains, has been used for working capital for such facilities as warehouses, offices, and cotton classing equipment. These vital elements of our total marketing program continue to work for your benefit." (FAC ¶46.) In *Cooper*, the court "decline[d] to require that a complaint . . allege specific shipments to specific customers at specific times with a specific dollar amount of improperly

11

recognized revenue." *Cooper v. Pickett*, 137 F.3d at 627. These allegations of the facts of the fraudulent activities are specific.

### 2. Intent to Deceive

Defendants argue that plaintiffs have not properly plead Calcot had an intent to deceive. Rule 9(b) provides in pertinent part: "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *See Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th 2007) (While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind-or scienter-of the defendants may be alleged generally), *petition for cert. filed*, 76 USLW 3058 (Aug. 02, 2007).

Plaintiffs allege that, "The misrepresentation were made with the intent to deceive plaintiffs and conceal both the losses from the Palm Bluffs Development and the unauthorized charge to the proceeds of the cotton sales. The intent was to deceive plaintiffs and have plaintiffs rely on said misrepresentation." (FAC ¶62.) This allegation is sufficient for alleging scienter.

### 3. Allegation of Reasonable Reliance

Defendants argue that plaintiffs make a conclusory allegation that they reasonably relied on the alleged representations.

Plaintiffs allege that "Agriculture is a very competitive industry. Further plaintiffs could have taken action to prevent the charges, including holding management accountable for the Palm Bluffs Development['s] horrible performance. Plaintiffs reasonably relied on said misrepresentations." (FAC ¶61.)

Certain elements must be plead in a fraud claim with particularity. *In re GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir.1994) (en banc) ("To allege fraud with particularity ... plaintiff must set forth what is false or misleading about a statement, and why it is false.") Defendants fail to cite to any authority that Rule 9(b) requires more particular pleading for the element of reliance.

### 4. Allegation of Damages

Calcot challenges plaintiffs' allegation of damages "according to proof."

Again, Defendants fail to cite to any authority that Rule 9(b) requires more particular pleading for the element of damages. While Rule 9(b) requires pleading the circumstances of fraud with particularity, defendants cite no case law, and the Court finds none, requiring that fraud damages be pled

with more specificity than required under normal notice pleading. *In re GlenFed, Inc.*, 42 F.3d at 1548.

### 5. **Failing to Distribute the Annual Report**

Defendants argue that Calcot cannot have committed fraud by failing to distribute its annual report because it is not required by Cal. Food and Agricultural Code §54204 to distribute its report. (FAC ¶64.) Calcot argues that its Bylaws permit it to dispense with the requirement of distributing its annual report.

The FAC alleges in relevant part that: "Calcot has a statutory duty to furnish its members (shareholders) with an annual report." The FAC alleges that a report that is false, misleading or improperly prepared is a breach of duty. "Calcot prepared annual reports but circulated them only to members of the board of directors." (FAC ¶64.)

Calcot relies on Cal. Food and Agricultural Code §54204 which provides:

> "The board of directors of every association shall cause to be sent to the members of the association not later than 120 days after the close of the fiscal or calendar year an annual report of the operations of the association, unless <u>such report is expressly dispensed with in the bylaws</u>."
> (Emphasis added.)

Calcot argues that:

> "Calcots' Bylaw at §10.03 states that the annual report requirements of the Food and Agricultural Code §54204 are expressly dispensed with."
> (Moving papers p.17:7.)

As stated above, the Court cannot take judicial notice of the truth of the matter asserted in Calcot's Bylaws. Thus, whether or not the annual report does or does not have to be distributed is a factual determination which cannot be made on a motion to dismiss.

### D. **Fiduciary Duty**

Defendants challenge that a fiduciary duty existed to plaintiffs and whether a fiduciary duty existed to separately account for or disclose the "secret real estate development retains." (Moving papers p.18.)

Plaintiffs allege that Calcot was a fiduciary, in its status of a marketing cooperative and by virtue of its handling of plaintiffs' monies. (See FAC ¶70.)

> 70. Plaintiffs allege that there was a fiduciary duty between CALCOT and the present and former members for, without limitation, the following reasons:

      a.      The relationship between a cooperative marketing association and its members is fiduciary in nature. Calcot's status as a fiduciary originates under its existence under [two] cooperative marketing statutes (See e.g, Cal.Corp Code §§14550-14551 (Nonprofit Cooperative Agricultural Marketing Associations); 7 U.S.C. §729 (the "Capper-Volstead act").)

      b.      Calcot acted as an agent for the members with respect to all dealings with members, including, without limitation, those under the marketing agreement and those involving the holding funds collected on behalf of the members.

      c.      Calcot acted as a trustee for the members with respect to all dealings with members, including, without limitation, those under the marketing agreement and those involving the holding of funds collected on behalf of the members." (FAC ¶70.)

These allegations adequately plead the existence of a fiduciary relationship. *See Bogardus v. Santa Ana Walnut Growers Ass'n*, 41 Cal.App.2d 939, 948 (1940) (the relationship between the grower member and the local association, and between the local association and the central association, was that of principal and agent, or beneficiary and trustee; that a fiduciary relationship existed which required at all times that these associations account to the grower member for all proceeds received from the sale of walnuts); *Accord California & Hawaiian Sugar Refining Corp. v. C.I.R.*, 163 F.2d 531, 535 (9th Cir. 1947) (under the California law the relationship created by the contract in the 'passage of title, and the terms of purchase and sale,'- that is from the very beginning- is that of a trust, with the members as settlors creating a trust estate for themselves as beneficiaries.), *cert. denied*, 332 U.S. 846 (1948).

Defendant argues that there was no duty to "disclose an Implied Cost of Carry" to its members - i.e., to disclose the secret real estate development retains. Calcot's characterization of the allegations, however, is too narrow. Plaintiffs allege that Calcot failed to disclose that money Calcot held for the members' benefit was being used for property development. The duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests. "Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud. ..." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 189, 98 Cal.Rptr. 837 (1971).

Plaintiffs adequately allege that there was a fiduciary relationship between plaintiffs and defendants because Calcot held monies for the benefit of its cotton marketing members. Accordingly,

plaintiffs have adequately alleged a fiduciary relationship.

**E.     Statute of Limitations**

Calcot argues that the statute of limitations bars the claims.

Where a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity. *Eisenbaum v. Western Energy Resources, Inc.*, 218 Cal.App.3d 314, 324 (1990); *Moreno v. Sanchez*, 106 Cal.App.4th 1415, 1424, 131 Cal.Rptr.2d 684, 689 (2003)("Delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust such as that involving a fiduciary, confidential or privileged relationship.")

Plaintiffs adequately allege the existence of a fiduciary relationship which postpones the accrual of the cause of action.

**F.     The Claim for Accounting**

Calcot argues that no action for an Accounting exists because an Accounting would be inconsistent with plaintiffs' other claims for monetary damages. Calcot argues that an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law, citing *St. James Church of Christ Holiness v. Superior Court In and For Los Angeles County*, 135 Cal.App.2d 352, 359 (1955) (An accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain.)

Generally, a party may set forth as many separate claims "as he has regardless of consistency and whether based on legal, equitable or maritime grounds ... " provided that all such claims are made in compliance with Rule 11. Fed.R.Civ.P. 8(e)(2). Further, basic principles of the law of fiduciaries place the burden to render an accounting on the fiduciary once the principal has shown that funds have been entrusted to the fiduciary and not paid over or otherwise accounted for. *In re Niles*, 106 F.3d 1456, 1462 (9th Cir. 1997).

Here, plaintiffs have alleged that the books and records are in the hands of Calcot, their fiduciary, and an accounting is necessary to determine the true amounts for the marketing of the cotton. (FAC ¶85.) Plaintiffs allege that Calcot as their fiduciary improperly retained some of plaintiffs' money. Accordingly, the claim for accounting will not be dismissed.

**G.    Breach of Contract Claim**

Calcot argues that the FAC impermissibly exceeds the scope granted by this Court to amend the complaint by adding a breach of contract claim as a new fifth cause of action.

Rule 15 provides the parties with flexibility in presenting their claims and defenses. It assures that cases will be heard on their merits and avoids injustices which sometimes resulted from strict adherence to earlier technical pleading requirements.

The Court's prior order granting Calcot's motion to dismiss with leave to amend did not preclude plaintiffs from adding a claim for relief.  While not specifically authorized, the Court finds no reason to strike the claim.

Calcot also argues that plaintiffs failed to allege that they mitigated their damages.  (Moving papers p.22.)  However, failure to mitigate damages is an affirmative defense that must be raised or is waived. *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1286 (11th Cir. 2000), *cert. denied*, 531 U.S. 813 (2000).  Plaintiffs have no obligation to negate affirmative defenses.

**H.    RICO Claims**

Plaintiffs allege three claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Plaintiffs allege violation of 18 U.S.C. § 1962(a) (prohibiting investment or improper use of money obtained from racketeering activity), 18 U.S.C. § 1962(b) (prohibiting use of a pattern of racketeering activity to acquire or to maintain an interest in or control in an enterprise), and 18 U.S.C. § 1962(c) (prohibiting association with an "enterprise" engaged in racketeering activity).

In analyzing the RICO claims, this Court starts from the proposition that the Ninth Circuit has held that the statutory terms of RICO should <u>not</u> be read narrowly. *Odom v. Microsoft Corp.*, 486 F.3d at 547.  Rather, following Supreme Court precedent, the Ninth Circuit ruled that "RICO is to be read broadly." *Id.*, citing was *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

To prevail on a civil RICO claim, a plaintiff must prove that the defendant engaged in: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property. " 'Racketeering activity' is any act indictable under several provisions of Title 18 of the United States Code," including extortion

and mail and wire fraud. *Rothman v. Vedder Park Management*, 912 F.2d 315, 316 (9th Cir.1990). Here, plaintiff alleges mail and wire fraud.  Mail fraud requires the showing of a scheme to defraud involving use of the United States mails with the specific intent to defraud, while wire fraud requires the same showing, but involves use of United States wires. *Forsyth v. Humana*, 114 F.3d 1467, 1481 (9th Cir.1997), *aff'd*, 525 U.S. 299, 119 S.Ct. 710 (1999); *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).

The allegations of the fraud may include general and specific allegations, as follows:

> "To the degree that the first requirement-the formation of a scheme or artifice to defraud-requires a showing of the defendants' state of mind, general rather than particularized allegations are sufficient. Similarly, the third requirement-specific intent to deceive or defraud-requires only a showing of the defendants' state of mind, for which general allegations are sufficient. The only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself."

*Odom v. Microsoft Corp.*, 486 F.3d at 554; *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 -1400 (9th Cir. 1986) (allegations of mail fraud under section 1962(a)-1962( c) "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme").

Defendant argues that plaintiffs have not adequately alleged the fraud that was committed via the mail.

Here, plaintiffs have adequately alleged the mail fraud with particularity.  Plaintiffs allege that defendants mailed a "final settlement" which misrepresented the final price per pound because it failed to disclose that the final price per pound for the cotton was reduced by the interest costs related to the Palm Bluffs Real Estate Development.  (See e.g., FAC ¶139 a-v; ¶44.)  Plaintiffs allege that the Final Settlement was provided to the growers every year and misrepresented the price per pound.  (FAC ¶44.) Instead, as alleged by plaintiffs, Calcot was deducting amounts to offset expenses related to the Palm Bluffs Development, which was entirely unrelated to the Marketing Agreement.

**1.     Specific Arguments as to §1962(a)**

Defendant argues that plaintiffs fail to allege an "investment injury;" that they were injured by "the use or investment of the income from the racketeering activity."

To state a § 1962(a) claim, the plaintiff must allege an "investment injury", that is, he " 'must

17

allege facts tending to show that he or she was injured by the use or investment of racketeering income.'" *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828 (9th Cir. 2003), *cert. denied*, 124 S. Ct. 2176, 158 L. Ed. 2d 733 (U.S. 2004). In *Wagh*, the court held that a plaintiff seeking redress must show that the funds obtained from the racketeering activity (such as mail fraud) <u>were used to injure</u> the plaintiff. It is insufficient to show that the plaintiff was injured by the investment of income derived from previous racketeering activity.

Plaintiffs allege injuries from the racketeering itself-mail and wire fraud- and have alleged an injury from the investment of proceeds obtained through the predicate acts of racketeering. Plaintiffs allege that as a result of the violation of 18 U.S.C. §1962(a), plaintiffs lost profits generated from the cooperative marketing and sales of cotton. (FAC ¶143.) Plaintiffs allege that "the effect of this increased overhead was to reduce the amounts otherwise payable to grower members . . ." (FAC ¶44.) Plaintiff allege more than merely the use of proceeds from the fraudulent scheme to establish and/or operate the enterprise. Plaintiff have alleged "a causal link between [Plaintiffs' injury] and the defendant's violation." *Wagh*, 363 F.3d at 829.

### 2. Specific Arguments as to §1962(b)

Defendants argue that the 1962(b) claim fails because plaintiffs do not allege the "control" of Calcot was as the result of a RICO enterprise.

To state a § 1962(b) claim, a plaintiff must allege that the defendant's activity led to defendant's control over or acquisition of a RICO enterprise, and that Plaintiffs were injured as a result of said control or acquisition. *Wagh*, 363 F.3d at 830. This means that Plaintiffs must allege a specific nexus between the control of the enterprise and the racketeering activity. *Id.; See also In re National Western Life Ins. Deferred Annuities Litigation*, 467 F.Supp.2d 1071, 1084 (S.D.Cal. 2006).

By its express terms, §1962(b) prohibits the *maintenance or control* or interest in any enterprise engaged in interstate commerce through a pattern of racketeering activity. *In re National Western Life Ins. Deferred Annuities Litigation*, 467 F.Supp.2d 1071, 1084 (S.D.Cal. 2006). In *National Western Life*, the Court held plaintiffs' allegations were sufficient to state a § 1962(b) claim. Plaintiffs had alleged "that Defendants generated income from their fraudulent scheme, conduct which led to its acquisition, maintenance, and control of the enterprise. This conduct allegedly resulted in economic

harm to Plaintiffs."

The FAC alleges that Defendants generated income from their fraudulent scheme, conduct which led to the maintenance and control of the enterprise. Plaintiffs allege that Calcot's venture into real estate development saddled growers with $23 million in interest costs over two decades and the interest cost was ultimately expensed to grower members. (FAC ¶¶37-38.) Indeed, plaintiffs allege that Calcot's racketeering activity, in turn, represented that the interest costs were part of "maintaining" Calcot. (FAC ¶46 ("[y]our investment in Calcot, represented by these retains, has been used for working capital and for such facilities as warehouses, offices and cotton classing equipment.") Thus, plaintiff alleges the maintenance and control of Calcot were in part through the racketeering activity. Accordingly, the motion to dismiss on this claim will be denied.

### 3. Specific Arguments as to Section 1962( c)

Section 1962( c) prohibits "any person" from conducting, or participating in, the affairs of an enterprise engaged in interstate commerce "through a pattern of racketeering activity." Section 1962( c) requires the "person" to be an entity distinct from the "enterprise" itself. *National Western Life Ins.*, 467 F.Supp.2d at 1084. Where the RICO "person" and "enterprise" are distinct, because the alleged enterprise includes additional persons, the allegations are enough to show that the RICO persons were conducting not merely their own affairs but the affairs of the enterprise. *National Western Life,* 467 F.Supp.2d at 1085.

Defendants argue that the §1962( c) claim is insufficient because it does not plead defendant Robert Norris' control of the enterprise and the racketeering activity.

The case cited by defendants, *Sea-Land Service, Inc. v. Atlantic Pacific Intern., Inc.*, 57 F.Supp.2d 1048, 1056 (D.Ha 1999), does not support Calcot's proposition. *Sea-Land Service* held a RICO person may not be held directly liable under § 1962( c), when it and the RICO enterprise are identical.

/////
/////
/////
/////

Plaintiffs allege that Mr. Norris is the CEO and President of Calcot and was the long-time Chief Financial Officer. (FAC ¶11, 158.) Plaintiffs allege that Mr. Norris "directed the commission of and/or aided and abetted the commission of two or more of these acts of racketeering activity." (FAC ¶161.) The allegations are sufficient to allege control.

## CONCLUSION

For the foregoing reasons, Calcot's Motion to Dismiss is DENIED in its entirety.

IT IS SO ORDERED.

**Dated:  October 9, 2007**                    **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE