1  Marshall C. Whitney, # 082952
   Jerry D. Casheros, # 203897
2  McCormick, Barstow, Sheppard,
   Wayte & Carruth LLP
3  P.O. Box 28912
   5 River Park Place East
4  Fresno, CA  93720-1501
   Telephone:      (559) 433-1300
5  Facsimile:      (559) 433-2300

6  Attorneys for Defendant
   EADIE AND PAYNE, LLP

7

(SPACE BELOW FOR FILING STAMP ONLY)

8               UNITED STATES DISTRICT COURT

9             EASTERN DISTRICT OF CALIFORNIA

10

11  ANDREWS FARM, a California
    partnership; and GREG PALLA, a sole
12  proprietor and doing business as GREG
    PALLA FARMING COMPANY,
13
                    Plaintiffs,
14
    v.
15
    CALCOT, LTD.; EADIE AND PAYNE,
16  LLP; and DOES 1-50,

17                  Defendants.

Case No.  1:07-CV-00464 LJO-DLB

**DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1    Defendant, EADIE AND PAYNE, LLP (hereafter referred to as "Eadie & Payne)

2    hereby submits the following Opposition to Plaintiffs ANDREW FARMS' and GREG PALLA dba

3    GREG PALLA FARMING COMPANY's (hereinafter collectively referred to as "Plaintiffs")

4    Renewed Motion for Class Certification.

5    **I.**

6    **INTRODUCTION**

7    By way of brief overview, this Court denied Plaintiffs' initial Motion for Class

8    Certification on the grounds that a conflict of interest between the identified class representatives—

9    Plaintiffs---and the class which it sought to certify. Subsequently, Plaintiffs' have filed a renewed

10   Motion for Certification ("Renewed Motion") seeking to narrow the class parameters. Defendant

11   submits that Plaintiffs' renewed effort fails to adequately define the purported class and ignores the

12   inherent differences amongst former members of Calcot, demonstrating that Plaintiffs are not

13   adequate class representatives. Moreover, Plaintiffs seek to include former Calcot members dating

14   back to 1983 --- a span of more than 25 years --- which would include deceased persons and/or

15   defunct or dissolved business entities otherwise not entitled to access the courts individually. The

16   result of the inclusion of such entities as class members would unfairly advantage Plaintiffs in

17   proceeding with their claims, given that these entities would not be allowed to bring suit individually

18   in the first instance. For this reason, we would ask the Court to exercise its discretion and employ an

19   "opt-in" mechanism to secure participation in the class.

20   In the meantime, Plaintiffs have failed to demonstrate that common issues of fact or

21   law predominate under Federal Rule of Civil Procedure 23(b)(3), but solely rely on the Court's

22   finding that commonality and typicality were satisfied---in the context of a Rule 23(a) analysis---to

23   argue that predominance has been met. Respectfully, we note that the Court did not reach the issue

24   of Rule 23(b) sufficiency in its prior Order. Instead, the "predominance test" is a separate inquiry

25   requiring independent proof to justify class certification. (Fed. R. Civ. Proc. 23(b)(3)). For the reasons

26   explained below, the common questions of fact will require individuated proof and analysis of claims,

27   disrupting any commonality and typicality otherwise seen in the purported class.

28   Importantly, Plaintiffs carry the burden of demonstrating the prerequisites for class

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. BOX 28912
FRESNO, CA 93729-8912

1

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1    certification. Despite this burden, a review of Plaintiffs' Renewed Motion yields insufficient evidence

2    that would allow this Court to grant the instant Motion, particularly after the Court conducts the

3    rigorous analysis and evaluation required by law. Plaintiffs have provided this Court with little more

4    than conclusory statements as to why and how they have established the various elements necessary

5    to certify a class. Because plaintiffs have not met their burden of proof, Eadie & Payne respectfully

6    requests that the Motion for Class Certification be denied.

## II.

## GENERAL STANDARDS PERTAINING TO CLASS ACTIONS

9    The procedure for class actions is set forth in Federal Rule of Civil Procedure Rule

10   23(a) sets out four prerequisites for bringing a class action.  If any one of the requirements is not

11   satisfied, a class action may not be maintained. (See Vol. 5, Moore's Federal Practice, §§23.20-23.25

12   (Matthew Bender 3d ed.).) Subdivision (b) provides additional requirements necessary for a class

13   action if the requirements of subdivision (a) are met. (Id. at §§23.40-23.47). Subdivision (c) authorizes

14   the court to certify or refuse to certify the action as a class action and requires the decision be made

15   "[a]t an early practicable time." (Id. at §§23.80-23.88).

16   The parties seeking to maintain the class action bear the burden to establish a prima

17   facie showing of each of the elements of Rule 23(a) requirements and the appropriate Rule 23(b)

18   ground for a class action.  (Fed. R. Civ. P. 23(b); Zinser v. Accufix Research Inst. Inc., 253 F.3d 1180,

19   1186 (9th Cir. 2001).)  To meet this burden, the Plaintiffs must provide the Court with a sufficient

20   basis to allow the Court to form a "reasonable judgment" of these requirements.  (Blackie v. Barrack,

21   524 F.2d 891, 901 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976).) For its part, the Court must

22   conduct a "**rigorous**" analysis to determine if each of these factors are met.  (General Tel. Co. of

23   Southwest v. Falcon 457 U.S. 147, 161 (1982) [emphasis added].)

24   In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification

25   must show that the action may be maintained under Rule 23(b)(1), (2), or (3). (Allied Orthopedic

26   Appliances, Inc. v. Tyco Healthcare Group L.P., 247 FRD 156, 164 (C.D. Cal. 2007).) Plaintiffs argue

27   that class certification is appropriate under Rule 23(b)(3), which permits a class action if the court

28   finds that: (1) The questions of law or fact common to class members **predominate over any**

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. BOX 28912
FRESNO, CA 93729-8912

2

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1  **questions affecting only individual members**; and (2) A class action is superior to other available

2  methods for adjudicating the controversy.   [Renewed Motion, pg. 14:14-18]   As set forth below,

3  however, plaintiffs have failed to bring themselves within the ambit of Rule 23(b)(3).

4  **III.**

   **PLAINTIFFS' HAVE NOT ESTABLISHED THE PRE-REQUISITES FOR**

5  **MAINTAINING A CLASS ACTION**

6  **A.**    **Adequacy Of Representation:**

7       1.    Standard For Proving Adequate Representation

8            Rule 23(a)(4) requires that the individuals representing the class must be able to

9  "fairly and adequately" protect the interests of all class members. A representative is not adequate if

10 such representative is antagonistic or has conflicts with other potential class members. (Amchem

11 Products, Inc. v. Windsor, 521 U.S. 591, 626 (1997).)  In other words, a class representative must not

12 seek relief that favors some class members at the expense of others.  (Payne v. Travenol Labs., Inc.,

13 673 F.2d 798, 810-11 (5th Cir. 1992).) [relief for a black female representative might have come at the

14 expense of black males who were also members of the class].)  If such uneven relief is sought, then

15 the class representatives are not adequate. (Ibid.)  In order to prove that a representative is

16 "adequate", the following must be proven: "(1) the interest of the representative party or parties must

17 coincide with that of the potential class; and (2) the representative party or parties must vigorously

18 prosecute the action."  (In re U. S. Financial Sec. Litigation, 69 F.R.D. 24, 36 (S.D. Cal. 1975), citing,

19 Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968)).

20            In their Renewed Motion, Plaintiffs interpret the Court's prior order to mean that an

21 exclusion of current members from the class would cure any and all adequacy of representation

22 problems. In that regard (and while taking exception with the Court's initial finding of a conflict),

23 Plaintiffs have narrowed the class to include only former members in an effort to proceed with their

24 motion. [Renewed Motion, pg. 13: 27-28, note 5].

25            Yet, we respectfully submit that plaintiffs have understated the Court's order.

26 Therein, the Court did not state that the exclusion of current members from the class would cure the

27 adequacy of representation problem, but rather found that a distinction between current and former

28 Calcot members created a conflict of interest which affected the adequacy of representation. As this

3

1    Court recognized, <u>the standard is that a class representative's interests must not be antagonistic to the</u>

2    <u>pecuniary interests of putative class members.</u> [Order on Plaintiff's Class Certification Motion ("May

3    1 Order"), pg. 13:9-10].   The Order did not preclude the defense from raising other issues in

4    response to the renewed motion. As such, a rigorous examination of Plaintiffs' purported class of

5    former Calcot members reveals substantial differences that undercut any claim of adequacy of

6    representation.

7          2.    <u>Plaintiffs, as the Purported Class Representatives, Were Not Members During the</u>
<u>Defined Period of Time of the Class</u>

8

9          It has been more than eight years since Plaintiff Andrew Farms has been a member of

10    Calcot. [Renewed Motion, pg. 3:12-13] (explaining that Plaintiff Andrew Farms was a member of

11    Calcot intermittently 1978 through 2001). Similarly, Plaintiff Greg Palla has not been a Calcot

12    member for  six years, since 2003. [Renewed Motion, pg. 3:16-18]. Yet, without any explanation or

13    basis, the two class representatives seek to represent all <u>former</u> Calcot members up to May 21, 2009.

14    This would put plaintiffs in the position of representing members during a time---over the past six

15    years---when they themselves did <u>not</u> enjoy membership to the cooperative. Though we believe that

16    a denial of certification is appropriate, Plaintiffs' "best case scenario" would only include

17    representation of former Calcot members up until the point at which Mr. Palla left in 2003.[1]

18          3.    <u>Former Class Members in the Year of 1999 Should Be Excluded Because They</u>
<u>Admittedly Were Charged With No Carried Interest</u>

19

20          As stated above, Plaintiffs' class seeks to certify all persons or entities that were

21    former members of Calcot between 1983 and May 21, 2009.  Without explaining why or how they

22    determined this otherwise arbitrary and extensive time-frame, Plaintiffs' requested class encompasses

23    individuals who have no claim, based on the testimony of Calcot's former Chief Executive Officer,

24    David Farley.

25          Specifically, for the year of 1999, Mr. Farley states that no "carry interest" was

26

27    [1] For an additional reason, plaintiffs should not be permitted to certify a class of members 2007-2009.
Specifically, plaintiffs filed their Complaint in 2007, alleging past misdeeds against the defendants.

28    Plaintiffs do not allege an ongoing "fraud" or seek any sort of injunctive relief.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
P.O. Box 28912
Fresno, CA 93729-8912

1   charged to the purported Plaintiffs. [Doc. 81, Declaration of David Farley, pg. 6:18-21][2]. Thus, where

2   individuals or entities were members of Calcot <u>exclusively</u> for the year 1999, they would have no

3   right to any damages as no "carry interest" allegedly  charged to them during this time.  To the extent

4   these persons or entities are allowed to remain in the class, their interests are diametrically opposed to

5   the class representatives.   Such potential members, who were members for one year and were

6   charged no carry interest would have a different assessment of the case versus those of Plaintiffs who

7   were members of Calcot for extended periods of time.

8           4.      <u>The Acquisition and Liquidation of Palm Bluffs Development Properties Fluctuated</u>
                    <u>Significantly from 1983 to 2009</u>
9
10          The anchor of Plaintiffs' allegations against Calcot is tethered to their claim that

    Calcot improperly withdrew interest costs associated with the purchase of property for the
11
    development of Palm Bluffs.  As straightforward as Plaintiffs wish to make this appear, the reality is
12
    that over the span of more than 25 years, the number of lots held by Calcot dramatically fluctuated
13
    with the purchase and sale of the properties, which would impact the interests of the former
14
    members depending upon the time of their membership. Currently, Calcot owns only one lot in the
15
    Palm Bluffs area when it once owed more than 154 lots  at its zenith.  [See Declaration Mark Bagby
16
    in Support of Opposition to Class Action ("Bagby Declaration")]. As a result of Calcot's fluctuating
17
    activity over the course of 25 years, former members are easily grouped into three distinct groups:
18
            First, during the time period of 1983 to 1990, Calcot was trying to develop Palm
19
    Bluffs.  To this end, Calcot was actively engaged in purchasing land in the Palm Bluffs development.
20
    This continued until 1990. [See Bagby Declaration].
21
            Second, from 1990 to 1997, a contaminant was found on the Palm Bluffs property
22
    that initiated an environmental litigation suit involving Calcot. [See Bagby Declaration].  During this
23
    time period, all Palm Bluffs development activities were halted and suspended. [<u>Id</u>.] No new
24
    properties were purchased nor sold during this time frame.  [<u>Id</u>.]
25

26   _____

27   [2]  For the sake of brevity and in an effort to avoid duplicative filings, Eadie & Payne respectfully request the Court refer
     to previously lodged declarations and associated exhibits by their applicable Doc. Nos. as referenced by the Court's
28   docket history.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
P.O. Box 28912
Fresno, CA 93729-8912

5

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1    Third, from 2000 onward, Calcot was actively selling its Palm Bluffs properties in

2    increments to purchasers. [Id.]. The money received went into the Calcot coffers and created a

3    positive benefit to its growers during this time period. [Id.] This creates another distinction which

4    undercuts the plaintiffs' commonality and adequacy of representation arguments. Specifically, Calcot

5    growers from 2000 to the present necessarily received a different benefit---vis a vis the Palm Bluff

6    property----than those who marketed with Calcot prior to this time. For example, the monies from

7    the property sales were placed in retained earnings, which resulted in lessened retains being charged

8    to Calcot members during this time. [Id.]. This is significant to the commonalty/adequacy of

9    representation analysis, in that the thrust of this case is that Palm Bluffs was a "financial disaster"

10   which had a deleterious impact on the growers.

11   As described above, only one lot is owned by Calcot in the Palm Bluffs Development

12   today. Over the long-drawn history of the project, it is clear that Plaintiffs interest would be different

13   compared to former members in 2009, especially compared to former members who would have a

14   significantly lower baseline of properties subject to interest charges.  (*e.g.*, in 2009, only one property).

15   Plaintiffs who were members when Calcot's property holdings were higher would have a different

16   financial assessment of any monies they may be entitled to compared to more recent members where

17   Calcot's property holdings were nominal.  That pecuniary assessment would further be different

18   based on how long each individual or entity was a member of Calcot.  Andrew Farms and Mr. Palla

19   have been members of Calcot for about 10 years and 23 years, respectively, and would therefore be

20   situated far differently than individuals who have been members, for example, three years.

21   Therefore, Plaintiffs' longstanding history with Calcot would be significantly different

22   than those with short term membership. Thus, it is respectfully submitted that without a narrowing

23   of the class or creation of subclasses, Plaintiffs could not adequately protect the interests of members

24   with a shorter history with Calcot or those who were members when Calcots' property holdings were

25   at their lowest.

26       4.       Plaintiffs Have Admitted Longstanding Antagonism Toward Calcot, Which Further
27                Cuts  Against The Adequacy Of Their Class Representation

28   With all due consideration to Plaintiffs' claims, Eadie & Payne submits that their

6

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1   motives for pursuing this matter reflect a long-held antagonism toward Calcot.  In that regard,

2   plaintiff Andrews testified to a pre-existing disagreement he had with Calcot regarding advances, that

3   partially led to his decision to leave the cooperative. [Doc. 96-3, Andrews Dep. pg. 37:5-25, pg. 38:1-

4   17.] Additionally, Mr. Andrews testified at length regarding the fact that he has "been taken

5   advantage of by marketing companies" over the years and that CALCOT "is another example of it."

6   [Doc. 96-3, Andrews Dep., pg. 90:8-15.]  Mr. Andrews went on to compare CALCOT to the Enron

7   scandal and testified that he feels that he has been cheated, lied to and has had his money taken by

8   multiple companies over the years.   [Doc. 96-3, Andrews Dep., pg. 90:8-94:13.]  Mr. Andrews

9   expressed more concern with recovering what he believes is rightfully his and has no concern about

10  its impact on CALCOT.  [Doc. 96-3, Andrews Dep. pg. 100:11-103:10.]

11          Mr. Palla shares that antagonism. He has been working for a Calcot competitor since

12  2002, which solicits cotton growers from the same area as Calcot. [Doc. 96-2, Palla Dep., pg. 12: 4-

13  19]. Mr. Palla left CALCOT because he was dissatisfied with CALCOT's marketing and believed that

14  CALCOT was favoring certain growers over others.   [Doc. 96-2, Palla Dep., pgs. 146:3-150:13.]

15  Specifically, he felt that there was inequitable treatment among growers. [Doc. 96-2, Palla Dep., pgs.

16  147-148.] In fact, Mr. Palla asserts that he complained to CALCOT's management regarding its

17  administration of the business and received answers with which he did not agree. [Doc. 96-2, Palla

18  Dep., pgs. 149:6-150:13.]   Given plaintiffs' pre-existing animus toward Calcot, their motives in

19  pursuing this suit call into question whether they have their own—or the potential class---interests at

20  heart.

21          While Plaintiffs contend they are adequate representatives, their admissions make it

22  clear that their motives in pursing this matter is purely monetary and they have little regard who, even

23  members of the potential class, pays the price. [Doc. 96-2, Palla Dep., pg. 126:2-6; Doc. 96-3,

24  Andrews Dep., pgs. 90:8-94:13, 100:11-103:10.] For these various reasons, Mr. Andrews and Mr.

25  Palla are not adequate class representatives.

26

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. Box 28912
FRESNO, CA 93729-8912

7

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

**IV.**
**AS PLAINTIFF'S PURPORTED CLASS WILL INCLUDE DECEASED PERSONS AND NON-EXISTING LEGAL ENTITIES THAT WOULD OTHERWISE HAVE NO INDIVIDUAL RIGHT TO ACCESS THE COURTS, THE COURT SHOULD EMPLOY AN OPT-IN PROCEDURE**

**A.**      **Only Legally Existing Entities May File Suit in the Courts**

As a preliminary matter, actions may only be brought by **existing** legal entities, both natural or artificial. (Fed. R. Civ. P. 17(a); *see, e.g.,* Estate of Migliaccio v. Midland Nat'l. Life Ins. Co., 436 F. Supp. 2d 1095, 1100 (C.D. Cal 2006) (holding that an investor's estate was not a legal entity, and therefore had no capacity to bring a fraud suit against an insurance company); Oliver v. The Swiss Club Tell, 222 Cal.App.2d 528, 537 ("[A] nonentity is incapable of suing or being sued.").) [Emphasis added.]

While Plaintiffs may have standing to bring suit, there is a problematic question as to whether the class members they hope to represent are **presently-existing legal entities** that would entitle them to any relief sought by Plaintiffs on their behalf. Here, Plaintiffs proposed class seeks to involve entities **dating back more than 25 years**. The declaration of Mr. Bagby, filed by Calcot and incorporated by reference herein, confirms that former Calcot members have gone out of business and no longer exist. To the extent that such entities no longer exist, for example, they would be incapable of bringing a suit for fraud in their individual capacity. This runs counter to Plaintiffs' general argument that the class action device would avoid multiple adjudications by numerous litigants, because such entities would not be qualified litigants to begin with. [Renewed Motion, pg. 6:11-12].

In their proposed class definition, Plaintiffs assert that the signatories to the marketing agreements with Calcot were entered into by either persons or business entities that included partnerships or corporations spanning the course of more than 25 years, beginning in 1983. [Renewed Motion, pg. 13:6-14]. By virtue of being former members and given the extensive duration of time that has since passed, there is an issue as to whether: (1) such persons are still living and; (2) the business entities presently exist, justifying their inclusion in class membership.

Beside the lengthy passage of time, other signs suggest that former Calcot members no longer exist. For one thing, Plaintiffs have been unsuccessful in their recruitment of other class

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
P.O. Box 28912
Fresno, CA 93729-8912

1   members, even after an active "marketing campaign".  [Doc. 96-2, Palla Dep., pgs. 72: 2-25, 97:8—

2   98:13; 108:21-118:3; See also, Doc. 96-3, Andrews Dep., pgs. 62:3-69:13.]  Significantly, this lack of

3   support has occurred after Plaintiffs spoke to various growers, created a website soliciting

4   participation, and Mr. Palla appeared on television to express his position on the litigation. [Id.; see

5   also Doc. 96-2, Palla Dep., pg. 72: 2-25, 97:8—98:13.] With respect to the business entities, there has

6   been a general decrease in cotton acreage in California's cotton industry, which further suggests that

7   these businesses no longer presently exist.  [See Bagby Declaration]. Also, Plaintiffs concede in their

8   Renewed Motion, "[t]here is no other litigation ongoing that plaintiffs are aware of . . . ." [Renewed

9   Motion, pg. 15: 27-28].  Even so, Plaintiffs make the inaccurate assumption that all prospective class

10  members---including numerous legal entities---exist and are able to participate in this litigation.

11          Therefore, because the class purports to include deceased persons or defunct entities

12  that would be unable to access the courts to maintain individual suits for fraud, their participation as

13  class members is improper. Consequently, their participation as class members would provide them

14  with a right—*i.e.* standing to sue--they would otherwise not be entitled to.

15  **B.**   **Given That This Class Seeks Membership of Deceased Persons and/or Defunct
        Business Entities, This Matter, If Certified, Should Be An "Opt In" Class As
16      Opposed To An "Opt Out" Class**

17          While class action notices typically allow class members to "opt-out," courts are

18  nonetheless armed with the ability to permit the establishment of an "opt-in" class.  (In re U.S.

19  Financial Securities Litigation, 69 F.R.D. 24, 54 (S.D. Cal. 1975) (recognizing that several cases have

20  permitted a notice that required class members to file "proofs of claim" to be included in the class).)

21  Furthermore,  Rule 23(d) empowers the Court to fashion notices within its discretion that will

22  "enable it to do justice."  (Id.) In that regard, Rule 23(d) allows the Court to make orders for the

23  protection of the members of the class or for the fair conduct of the action. Thus, District courts

24  properly have the discretion to permit an opt-in procedure. (In re U.S. Fin'l Secur. Litig., supra, 69

25  F.R.D. at 53-54; Smith v. Montgomery County (D MD 1987) 117 F.R.D. 372, 374).

26          Here, Plaintiffs seek to include a class of members **dating back more than 25 years**,

27  including now deceased persons and defunct entities. Such persons, as indicated, will not be able to

28  access the courts individually to maintain a suit for fraud. A class that wishes to include former

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
P.O. Box 28912
Fresno, CA 93729-8912

9

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1    Calcot members over the span of 25 years is a unique fact of this class that will unfairly prejudice

2    Defendants, and, more generally, create significant complications for the parties and the Court. If the

3    parties proceed via an "opt-out" procedure, then defunct entities and deceased persons will

4    automatically (because they will obviously not object to inclusion in the lawsuit) be enrolled into the

5    prospective class. By artificially inflating the number of class members, it would invite multiple

6    motions, on the ground of standing, to each individual plaintiff in that class. The defense would have

7    to investigate which entities and persons have standing, bring a motion as to each person lacking

8    standing, and ask the Court to make individual adjudication. This is not to mention the difficulties

9    that it would cause for Plaintiffs in attempting to settle a case where the legitimacy of the certified

10   class members is unknown.

11        An "opt in" solves all these problems. By requiring persons to affirmatively opt-in to

12   the litigation (i.e. by filing a proof of claim), this would ensure that any participating plaintiffs are

13   legitimately before the Court. Thus, the purpose of the opt-in requirement would be to demonstrate

14   that entities are presently-existing, given the reality that many entities will no longer exist. This would

15   ensure that parties do not introduce class members that would otherwise have no right to access the

16   courts.  We submit that given the facts of this case, with the broad swath of time (back into the early

17   1980's) being proposed for class certification, that the opt-in mechanism is appropriate.

18   **C.    Because The Proposed Class Would Include Both Viable And Defunct Entities,
         Plaintiffs Have Failed To Adequately Identify The Class**

19

20        Additionally, we submit that Plaintiffs fail to adequately define the "class"[3] due to

21   their failure to draw this distinction between presently-existing entities and non-existent entities.

22   Plaintiffs proposed class definition is ambiguous as to individuals who would comprise the class.

23

24   [3] A preliminary matter that should be addressed, before any consideration of the Rule 23(a) factors, is whether
     the class has been adequately defined by the Plaintiffs.

25              Identification of the class serves at least two obvious purposes in the context
            of certification. First, it alerts the court and parties to the burdens that such a
26          process might entail. In this way the court can decide whether the class
            device simply would be an inefficient way of trying the lawsuit . . . . Second,
27          identifying the class insures that those actually harmed by defendants'
            wrongful conduct will be the recipients of the relief eventually provided."
28          (Simer v. Rios, 661 F.2d 665 (7th Cir. 1982) cert. denied, 456 U.S. 917).

10

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. BOX 28912
FRESNO, CA 93729-8912

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

Accordingly, without any distinction between presently-existing entities and non-existent entities, the class definition does not permit the Court to understand who is actually encompassed in Plaintiffs overly broad class definition

**V.**
**EVEN IF PLAINTIFFS COULD PROVE THE REQUIREMENTS OF RULE 23(A), WHICH THEY CANNOT, THEY CANNOT DEMONSTRATE THAT THEY QUALIFY FOR CERTIFICATION UNDER RULE 23(B)**

**A.**     **General Law:**

In addition to demonstrating the propriety of certification under the Rule 23(a) requirements, Plaintiffs must establish under Rule 23(b) one of the following: (1) That prosecution of separate actions would create a risk of inconsistent adjudications with incompatible standards of conduct; (2) The party opposing the class acted or refused to act on grounds applicable to the class; (3) Questions of law or fact common to class members predominate and class action is superior to other available methods for resolving the controversy. Plaintiffs contend this case meets the requirements of Rule 23(b)(3). Eadie & Payne respectfully disagrees.

The objective is to promote economy and efficiency where common questions predominate and a class action can achieve economies of time, effort and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes because the same issue can be adjudicated the same way for the entire class. (See 5 Moore's Federal Practice, §§23.44-23:47.) If the claims, as to liability, require a significant degree of individualized proof, the common questions do not predominate and certification is unwarranted. (Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles, 246 F.R.D. 621, 634 (C.D. Cal. 2007).)

It is Plaintiffs' burden to show the relative benefits of class treatment, as opposed to individual lawsuits or other procedures. (Gregory v. Finova Capital Corp., 442 F.3d 188, 191 (4th Cir. 2006) [emphasis added].) Efficiency is one of the primary purposes of class action procedure and a district court may exercise its discretion to deny certification if the resulting class action would be unmanageable or cumbersome. (Barnes v. American Tobacco Co., 161 F.3d 127, 142 (3d Cir. 1998).)

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
P.O. Box 28912
Fresno, CA 93729-8912

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

**B.     Plaintiffs Cannot Prove That Common Questions Of Law And Fact Prevail**

Similar to questions involving commonality and typicality, Plaintiffs must also demonstrate that common questions of law and fact predominate and that class status is the most efficient mechanism in which to proceed.  (Multi-Ethnic Immigrant Workers Org. Network, supra, 246 F.R.D. at 634; Gregory, supra, 442 F.3d at 191.)

Plaintiffs make no effort to satisfy their burden regarding predominance. Rather, Plaintiffs completely rely on the Court's May 1, 2009 Order, which found commonality and typicality, to advance their claim that common issues of fact and law predominate.  [Renewed Motion, pg. 15: 2-10].  In other words, Plaintiffs argue that because there was commonality and typicality as found by the Court in its May 1st Order, the predominance test is also satisfied. That is a *non sequitur*. Such a holding would eviscerate the Rule 23(b)(3) predominance test and render it meaningless if commonality and typicality under Rule 23(a) were the sole requirements.

Here, common questions of fact do not predominate this matter.  For instance, Mr. Palla was on the Board of Directors from 1992-2002. [Doc. 96-2, Palla deposition, pg. 31:16-20] He testified as to an alleged misrepresentation made by Calcot and the accountants during a Board of Directors meeting. [Id., pgs. 48-51, pgs. 143:13-25] By contrast, Mr. Andrews never attended any Board of Directors meetings, but would occasionally attend annual grower meetings. [Doc. 96-3, Andrews deposition, pg. 55:3-18, pg. 57:9-13]. In further contrast to the position of Mr. Palla, Mr. Andrews confirms that Calcot made no representations to him pertaining to the cost and expenses related to the Palm Bluffs Development. [Doc. 96-3, Andrews Deposition, pg. 40:11-23]. Further, no CPAs ever made any representations to Mr. Andrews about Palm Bluffs. [Id. at pg. 56:5-18].

Significantly, this is not a case where Plaintiffs have established that Eadie & Payne's claimed representations were part of a national sales pitch or that the only logical reason for a certain course of action was the representations.  (In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 140 F.R.D. 425, 431 (D Ariz. 1991) [finding that "the exact wording of the oral misrepresentations . . is not the predominant issue. It is the underlying scheme which demands attention.); Peterson v. H & R Block Tax Services, Inc., 174 F.R.D. 78, 85 (N.D. Ill. 1997) [finding that the only logical reason for paying the fee was defendants' representations].) Instead, potential members would have to prove

12

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1   that they attended the meeting and remained a member because of Eadie & Payne's representations.

2   Moreover, the potential members logically have other reasons for continuing business with

3   CALCOT; namely they were making money.  In fact, the evidence demonstrates that a significant

4   amount of time will be spent on what information was provided by Eadie & Payne and to whom

5   regarding CALCOT. Based on Plaintiffs version of events, certain members received some of the

6   information at issue, while others did not.  [Doc. 96-2, Palla Dep., pg. 138:20-139:2; 140:18-141:21].

7           Moreover, individualized evidence will be required because each class member must

8   prove that the alleged representations were made to them and that they relied upon those

9   representations.  (In re Life USA Holding, supra, 242 F.3d at 144-147; Fox, supra, 181 Cal. App. 3d

10  at 962.)  As a result, the Court will be forced to hear individualized evidence from each class member

11  to demonstrate that he or she is entitled to recover damages against Eadie & Payne.  Thus, common

12  questions of fact do not predominate.

13          Likewise, as Plaintiffs acknowledge, the predominance factor focuses on whether the

14  proposed class is sufficiently cohesive.  [Renewed Motion., pg. 14:18-20.]  Notably, and without any

15  evidentiary support, Plaintiffs assert that this element has been met.  Nevertheless, as fully set forth

16  above, Plaintiffs' position presents clear conflicts of interest with other members of the cooperative.

17  This lack of cohesion (between the plaintiffs and the proposed class) renders Plaintiffs unable to

18  meet the hurdle of predominance.

19                                              **VI.**
    **WHILE THE COURT SHOULD DENY CERTIFICATION FOR THE REASONS**
20  **MENTIONED ABOVE, IT BEARS MENTION THAT PLAINTIFFS PROPOSED**
                                  **NOTICE IS IMPROPER**
21

22  **A.       General Law Regarding Notice**

23          As Plaintiffs acknowledge, they have an obligation to notify all potential members

24  with "the best notice that is practicable under the circumstances, including individual notice to all

25  members who can be identified through reasonable effort." (FRCP Rule  23(c)(2)(B); Eisen v. Carlisle

26  & Jacquelin (1974) 417 U.S. 156, 173 (1974).)  The purpose of providing notice is to "present a fair

27  recital of the subject matter of the suit and to inform all class members of their opportunity to be

28  heard. (In re Gypsum Antitrust Cases, 565 F.2d 1123, 1125 (9th Cir 1977); Republic Nat'l Bank v

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. BOX 28912
FRESNO, CA 93729-8912

13

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1   Denton & Anderson Co., 68 FRD 208 (ND Tex 1975).

2
3       "Not only must the substantive claims be adequately described but the
        notice must also contain information reasonably necessary to make a
        decision to remain a class member and be bound by the final
        judgment or opt out of the action. The standard then is that the notice
4       required by subdivision (c)(2) must contain information that a
        reasonable person would consider to be material in making an
5       informed, intelligent decision of whether to opt out or remain a
        member of the class and be bound by the final judgment."
6
7   (Ravens v. Iftikar, 1997 U.S. Dist. LEXIS 10332, 8 (N.D. Cal. 1997), citing In re Nissan Motor Corp

8   Antitrust Litigation, 552 F.2d 1088, 1104-05 (5th Cir 1977).) Furthermore, the "notice should be

9   neutral and objective in tone, and should neither promote nor discourage the assertion of claims."

10  (Schaefer v. Overland Express Family of Funds, 169 F.R.D. 124, 131 (S.D. Cal. 1996).)

    **B.    The Proposed Notice Must Be Revised In Order To Allow The Potential Class**
11      **Members To Make An Intelligent Decision As To Whether To Join The Lawsuit**

12              Plaintiffs' proposed notice contains argumentative statements and legal conclusions,

13  while excluding important information necessary for potential members to make an intelligent

14  decision about joining a lawsuit or not. First off, Plaintiffs' notice and definition of the class assumes

15  that: (1) interest was actually deducted from cotton payments, and (2) that any alleged deduction was

16  fraudulent. The proposed notice thus contains a legal conclusion on the very issue that the parties are

17  litigating - whether the interest was actually deducted in the manner that Plaintiffs' allege. Further, the

18  notice implies that Defendants engaged in some wrongful conduct by its statements characterizing

19  such deductions as "disguised." Ultimately, how would a person know whether they had interest

20  drawn from their retains, let alone done in a fraudulent or improper manner?

21              Moreover, the notice would lead members to believe that they were charged

22  "substantial losses" from real estate development efforts, which implies that the individual may stand

23  to collect a "substantial" reward in return. Yet, this contradicts Plaintiffs' position that a class action

24  is appropriate given the "modest" individual claims involved.  [Renewed Motion, pg. 15, lines 24-26].

25  Once again, the proposed notice falls well short of being written in a "neutral and objective" tone, as

26  the law requires.  (Schaefer, supra, 169 F.R.D. at 131.)

27              Similarly, Plaintiffs' proposed notice should delete the reference to the website

28  dedicated to this matter – cottonclassaction.com – because the website is not neutral and objective.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. BOX 28912
FRESNO, CA 93729-8912

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1  (Schaefer, supra, 169 F.R.D. at 131.)  Including the website address as part of the proposed notice is

2  improper because it contains only the Plaintiffs' unfettered version of events.

3         The proposed notice also improperly characterizes a material fact that potential

4  members would want to know before making the decision on whether to enter the class. The notice

5  states that funds are not presently available because there has been no settlement or judgment. The

6  implication is that such funds **would** be fully available in the event of a settlement or judgment. Yet,

7  as indicated in the previous motion, the defense position is that Calcot has no insurance to cover the

8  losses alleged by Plaintiffs. Accordingly, in the event of any judgment against Calcot or Eadie &

9  Payne, there will be insufficient funds to fully pay all members of the class.

10        This, undoubtedly, is a material fact that a reasonable person would want to know

11  before making a decision of joining the class.  (Schaefer, supra, 169 F.R.D. at 131.) A potential

12  member would want to know if, in the event of a judgment or settlement, they could actually get

13  paid. In that regard, one Court has found that when certain potential members have a substantial

14  interest in refraining from participating, then notice must be specific as to all material facts.

15  (Republic Nat'l Bank, supra, 68 FRD at 218.) Yet, Plaintiffs' notice altogether fails to mention this

16  issue, falling short of the necessary full disclosure. (Ibid.) To remedy this, we would ask the Court to

17  include language, such as: "The defense position is that Calcot does not have insurance which will

18  cover a settlement or judgment in this case, and that it would be unable to fund a settlement or

19  judgment."

20        Lastly, the Notice inaccurately represents the identity of the litigating parties.

21  Specifically, it states that "former and current" members have sued Defendants.  This statement,

22  however, is incorrect as Plaintiffs are admittedly not members of CALCOT.  [Doc. 96-3, Andrews

23  Dep., Pg. 20:19-21 (Mr. Andrews has not been a member since 2001); Doc. 96-2, Palla Dep., pg.

24  20:21-21:3 (Mr. Palla has not been a member since 2003).] As written, potential class members would

25  get the (erroneous) impression that current members have sued Defendants, when in fact no current

26  members are involved.  Thus, the Notice should be revised in order to correctly identify the

27  purported class.

28        In sum, the Notice falls short of providing objective and material information to the

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. Box 28912
Fresno, CA 93729-8912

15

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

1    prospective class members, as required by law.

2    **C.**      <u>**Plaintiffs Should Be Required To Pay For The Notice**</u>

3              In their Motion, Plaintiffs indicate they will bear the cost of notice "if need be."

4    [Renewed Motion, pg. 17:13]. Nonetheless, they contend that because Defendants have access to the

5    names of the potential class members, Defendants should bear the costs of notice. This contention,

6    however, has no merit. The Supreme Court set forth the general rule that the representative

7    plaintiffs in Rule 23(b)(3) class actions must initially absorb the cost of class notice. (*Eisen*, supra, at

8    156.) Moreover, if the expense to either party is approximately the same, plaintiff must bear the cost

9    because plaintiff is most (if not exclusively) benefited by certification of the class. (*Oppenheimer Fund,*

10   *Inc. v. Sanders*, 437 U.S. 340, 355-358). Therefore, while the Court can require Defendants to produce

11   its last known contact information for such members, Plaintiffs must nevertheless bear the costs of

12   notice and must offer to reimburse Defendants for any search and handling costs associated with its

13   forwarding notice. (<u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 356 (1978); <u>Silber v. Mabon</u>,

14   957 F.2d 697, 701 (9th Cir. 1992).)

15             Here, Calcot does not maintain membership records on an easily, accessible

16   electronic database. [ See Bagby Declaration]. That is, they **consist of individual paper records**

17   that must be painstakingly scoured through. To the extent that membership records are retained,

18   Calcot only maintains such records going back 7-10 years in time. [<u>Id.</u>] Consequently, Calcot would

19   be placed in an onerous position were the Court to require it to go back and investigate its

20   membership for more than 25 years. Thus, because no compilation currently exists, the time, effort

21   and expense would be equal for Plaintiffs as would be for Defendants. As a result, while the Court

22   may order Defendants to produce the list of its former members to the extent that it is able to do so,

23   the costs associated with notice should be bore by Plaintiffs. (<u>Silber</u>, <u>supra</u>, at 701.)

24                                    **VII.**
                                  <u>**CONCLUSION**</u>

25             Plaintiffs have asked this court to certify, as a class, all Calcot growers since 1983.

26   That is the relief they have requested. Yet, a rigorous review of Plaintiffs' Motion reveals that they

27   have failed to meet their burden demonstrating that such class status is appropriate. Rather, the

28

                                              16

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
P.O. BOX 28912
FRESNO, CA 93729-8912

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

evidence demonstrates that, among other things, the plaintiffs are not adequate class representatives and that they cannot show that common questions of fact or law predominate. Under federal law, a class action effort cannot succeed where the plaintiffs do not meet any one of the required elements for certification. As such, Eadie & Payne respectfully requests that the Court deny Plaintiffs' Renewed Motion for Class Certification.


Dated:   June 15, 2009                                McCORMICK, BARSTOW, SHEPPARD,
                                                              WAYTE & CARRUTH LLP


                                                       By: _____/s/ Jerry D. Casheros_____
                                                              Marshall C. Whitney
                                                              Jerry D. Casheros
                                                              Mandy L. Jeffcoach
                                                              Attorneys for Defendant
                                                              EADIE AND PAYNE, LLP.

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................................1

II.    GENERAL STANDARDS PERTAINING TO CLASS ACTIONS....................................2

III.   PLAINTIFFS' HAVE NOT ESTABLISHED THE PRE-REQUISITES FOR
       MAINTAINING A CLASS ACTION ...........................................................................3

       A.    Adequacy Of Representation:......................................................................3

             1.    Standard For Proving Adequate Representation................................3

             2.    Plaintiffs, as the Purported Class Representatives, Were Not Members
                   During the Defined Period of Time of the Class..............................4

             3.    Former Class Members in the Year of 1999 Should Be Excluded
                   Because They Admittedly Were Charged With No Carried Interest................4

             4.    The Acquisition and Liquidation of Palm Bluffs Development
                   Properties Fluctuated Significantly from 1983 to 2009 ......................5

IV.    AS PLAINTIFF'S PURPORTED CLASS WILL INCLUDE DECEASED
       PERSONS AND NON-EXISTING LEGAL ENTITIES THAT WOULD
       OTHERWISE HAVE NO INDIVIDUAL RIGHT TO ACCESS THE COURTS,
       THE COURT SHOULD EMPLOY AN OPT-IN PROCEDURE ..........................................8

       A.    Only Legally Existing Entities May File Suit in the Courts...........................8

       B.    Given That This Class Seeks Membership of Deceased Persons and/or
             Defunct Business Entities, This Matter, If Certified, Should Be An "Opt In"
             Class As Opposed To An "Opt Out" Class...................................................9

       C.    Because The Proposed Class Would Include Both Viable And Defunct
             Entities, Plaintiffs Have Failed To Adequately Identify The Class............10

V.     EVEN IF PLAINTIFFS COULD PROVE THE REQUIREMENTS OF RULE
       23(A), WHICH THEY CANNOT, THEY CANNOT DEMONSTRATE THAT
       THEY QUALIFY FOR CERTIFICATION UNDER RULE 23(B) ......................................11

       A.    General Law: .............................................................................................11

       B.    Plaintiffs Cannot Prove That Common Questions Of Law And Fact Prevail...........11

VI.    WHILE THE COURT SHOULD DENY CERTIFICATION FOR THE
       REASONS MENTIONED ABOVE, IT BEARS MENTION THAT PLAINTIFFS
       PROPOSED NOTICE IS IMPROPER..........................................................................13

       A.    General Law Regarding Notice .................................................................13

       B.    The Proposed Notice Must Be Revised In Order To Allow The Potential
             Class Members To Make An Intelligent Decision As To Whether To Join The
             Lawsuit ......................................................................................................14

       C.    Plaintiffs Should Be Required To Pay For The Notice ...............................16

VII.   CONCLUSION ....................................................................................................16

i

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

**Cases**

Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.,
   247 FRD 156, 164 (C.D. Cal. 2007) ...........................................................................2

Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.
   140 F.R.D. 425, 431 (D Ariz. 1991) .........................................................................12

Amchem Products, Inc. v. Windsor, 521 U.S. 591, 626 (1997) ........................................3

Barnes v. American Tobacco Co.
   161 F.3d 127, 142 (3d Cir. 1998) .............................................................................11

Blackie v. Barrack, 524 F.2d 891, 901
   (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976) ...................................................2

Dolgow v. Anderson,
   43 F.R.D. 472 (E.D.N.Y.1968) ...................................................................................3

Eisen v. Carlisle & Jacquelin
   (1974) 417 U.S. 156, 173 (1974) ........................................................................13, 16

Estate of Migliaccio v. Midland Nat'l. Life Ins. Co., 436 F. Supp. 2d 1095, 1100 (C.D. Cal 2006) ......8

General Tel. Co. of Southwest v. Falcon 457 U.S. 147, 161 (1982) ..................................2

Gregory v. Finova Capital Corp.
   442 F.3d 188, 191 (4th Cir. 2006) ......................................................................11, 12

Gypsum Antitrust Cases
   65 F.2d 1123, 1125 (9th Cir 1977) ...........................................................................13

In re U.S. Financial Securities Litigation, 69 F.R.D. 24, 54 (S.D. Cal. 1975) ...................9

Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles
   246 F.R.D. 621, 634 (C.D. Cal. 2007) .................................................................11, 12

Nissan Motor Corp Antitrust Litigation
   552 F.2d 1088, 1104-05 (5th Cir 1977)....................................................................14

Oliver v. The Swiss Club Tell, 222 Cal.App.2d 528, 537 ..................................................8

Oppenheimer Fund, Inc. v. Sanders
   437 U.S. 340, 356 (1978) ..........................................................................................16

Peterson v. H & R Block Tax Services, Inc.
   174 F.R.D. 78, 85 (N.D. Ill. 1997) ............................................................................12

Ravens v. Iftikar, 1997 U.S. Dist. LEXIS 10332, 8 (N.D. Cal. 1997)................................14

Republic Nat'l Bank v Denton & Anderson Co., 68 FRD 208 (ND Tex 1975) .............14, 15

Schaefer v. Overland Express Family of Funds 169 F.R.D. 124, 131 (S.D. Cal. 1996) ....................14

ii

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

Silber v. Mabon
   957 F.2d 697, 701 (9th Cir. 1992) ..........................................................................16

Smith v. Montgomery County
   (D MD 1987) 117 F.R.D. 372, 374 ...........................................................................9

U. S. Financial Sec. Litigation,
   69 F.R.D. 24, 36 (S.D. Cal. 1975) ..........................................................................3, 9

Zinser v. Accufix Research Inst. Inc.,
   253 F.3d 1180, 1186 (9th Cir. 2001) ........................................................................2

**Statutes**

Fed. R. Civ. P. 17(a) ...........................................................................................................8

Fed. R. Civ. P. 23(b) ...........................................................................................................2

Fed. R. Civ. Proc. 23(b)(3) .............................................................................................1, 15

FRCP Rule  23(c)(2)(B)......................................................................................................13

12402/00039-1408840.v1

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP

5 River Park Place East
Fresno, CA 93720-1501

DEFENDANT, EADIE AND PAYNE'S OPPOSITION TO
PLAINTIFFS' RENEWED MOTION FOR RENEWED CLASS CERTIFICATION