RALPH B. WEGIS, SBN 67966
MICHAEL J. STUMP, SBN 193542
LAW OFFICES OF RALPH B. WEGIS, P.C.
1930 TRUXTUN AVENUE
BAKERSFIELD, CALIFORNIA 93301
TELEPHONE: (661) 635-2100
FAX: (661) 635-2107

Attorneys for Plaintiffs, Andrews Farms and
Greg Palla, individually and on behalf of the class

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| ANDREWS FARMS, a California partnership; and, GREG PALLA, a sole proprietor and doing business as GREG PALLA FARMING COMPANY, individually, and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CALCOT, LTD; EADIE AND PAYNE, and DOES 1-50,<br><br>Defendants. | Case No.:  1:07-CV-00464-LJO-DLB<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION<br><br>[Filed and served concurrently with: *(1) Declaration of Declaration of Ralph B. Wegis; (2) Plaintiffs' Response To Defendants' Separate Statement of Undisputed Facts; and, (3) Notice of Lodgment and Lodgment of Declaration of David Farley*]<br><br>Date:  <u>August 12, 2009</u><br>Time:  8:30 a.m.<br>Courtroom:  4 |

## I. **INTRODUCTION**.

Plaintiffs maintain a putative class action against Calcot Ltd. ("Calcot"), its CPA Eadie and Payne ("E & P") and the former CEO of Calcot.

Paragraph 6 of the Marketing Agreement unambiguously and definitively supports plaintiffs' understanding of the Agreement.  Calcot[1] fashions an argument, without a single declaration, by ignoring language in the Agreement that directly negates Calcot's position.

---

[1]  In view of the "joinder" in the motion by defendant Eadie and Payne, plaintiffs will collectively sometimes refer to the moving parties on the present motion as either "defendants" or "Calcot."

1    Calcot also continues to seek to confuse plaintiffs' direct action with a derivative action.

2    Calcot's entire Separate Statement is irrelevant to a direct action.  It also is merely argument by

3    counsel without any evidentiary basis.

4    **II.** **BACKGROUND**.

5    **A.**    **Procedural Background**.

6    Plaintiffs filed their Motion For Class Certification on March 3, 2009.  (Doc. Nos. 73 to

7    91).  In the *May 1, 2009 Order*, the Court found that plaintiffs established Rule 23(a) subparts 1

8    (impracticability), 2 (commonality), and 3 (typicality).  (*May 1, 2009 Order*, pgs. 4:27-10:15).

9    The Court, however, found there was a conflict regarding the class representatives and

10   present members of Calcot.  (*May 1, 2009 Order*, pgs. 10:17-14:16.)  On that ground, the Court

11   denied the class certification motion without prejudice.  (*May 1, 2009 Order* pgs. 15:14-21.)  The

12   Court ruled that it would "allow the plaintiffs the opportunity to submit a further proposal, either

13   to narrow the class definition or to propose subclasses."  (*May 1, 2009 Order* pgs. 14:9-12.)

14   Plaintiffs filed a renewed motion on May 21, 2009.  (Doc.114.)  The Court reviewed that

15   motion and informed plaintiffs that plaintiffs misinterpreted the Court's May 1, 2009 order.

16   (Doc. 119.)  Plaintiffs therefore filed the new motion seeking class certification on May 29,

17   2009.  (Doc 120.)

18   Calcot filed its Opposition on June 15, 2009.  (Doc. 141.)  Concurrently Calcot filed a

19   motion for summary adjudication as a "cross and counter motion."  (Doc. 134.)  Eadie and Payne

20   joined.  (Doc. 140)  The possibility of the filing of a summary adjudication motion had never

21   previously been disclosed by defendants.

22   The summary adjudication motion was improperly noticed.  (Local Rule78-230(b).)  The

23   Court, on its own motion, reset the hearing for August 12, 2009.  (Doc. 152.)

24   **B.**    **The Farley Litigation**.

25   David Farley is the former CEO of Calcot.  He complained about the unethical and illegal

26   conduct at the center of this litigation, as set forth in detail in his concurrently filed declaration.

27   He was fired for advocating that the secret and illegal charges should be disclosed.  Calcot

28   sought to destroy him by firing him for pre-textual reasons.  His declaration details the illegal

PLAINTIFFS' MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

1    conduct by Calcot.

2         **C.     Plaintiffs' Claims**.

3         Calcot enters into marketing agreements with each of its members.  The relationship with

4    each member, as is each marketing agreement, is identical in all parts relevant to plaintiffs'

5    claims.

6         Calcot advances the grower/members money when the grower delivers his/her cotton to

7    Calcot's warehouse.  The grower is paid an advance against the expected sales price of each bale

8    of cotton ("Initial Advance").  As sales of the member's cotton are "booked" and receivables

9    collected, a series of additional payments are made ("Progress Payments") through the end of the

10   fiscal year.  At the end of the fiscal year, a final settlement is made, which pays the grower for

11   the remainder of any sums not previously paid except for retains which are subsequently paid to

12   the grower.  (Marketing Agreement.)

13        At ¶ 6, the Marketing Agreement provides:

14            "CALCOT shall market cotton delivered by GROWER and there
              shall be deducted from the proceeds of sales thereof the cost of
15            freight, insurance, storage, and any other expense incurred in
              handling cotton, including all costs of operating and maintaining
16            CALCOT, together with retains for the Cotton Revolving Fund and
              other fund or funds as provided for in the Bylaws concerning
17            cotton."

18        Plaintiffs' claims arose from Calcot and E & P's conduct related to concealing losses

19   from Calcot's Palm Bluffs Real Estate Development and the subsequent financing of that

20   development.  The initial Palm Bluffs Development Pinedale property in Fresno was acquired by

21   Calcot in or about 1951.  Over the years, Calcot operated a cotton compress and warehouse

22   facility on this property, leased portions to third parties, and constructed a truck scale.  Around

23   1980, Calcot expanded the Pinedale property by acquiring adjacent properties as part of a

24   speculative land development scheme that would demolish the warehouse facilities and replace

25   them with non-cotton related development on the expanded 200+ acre assemblage.  By 1997,

26   Calcot had ceased its cotton warehousing operation on the Pinedale Property.

27        Since about 1980, Calcot has expended around $100,000,000 in developing the Palm

28   Bluffs property and carrying the property.  Calcot's venture into real estate development was a

---

3

PLAINTIFFS' MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

financial disaster, ultimately expensed to its grower members without their knowledge and consent. Calcot's venture into the real estate development market saddled growers with secret retains in excess of twenty-three million dollars ($23,000,000) utilized to pay interest costs for carrying the venture. These were disguised as interest costs incurred in the handling and marketing of the members' cotton.

Neither the members nor member directors were informed that interest costs for the Palm Bluffs Development were deducted under paragraph 6. Calcot directly violated the Marketing Agreement at paragraph 6.

The interest costs for the Palm Bluffs Development project were not authorized under paragraph 6 as "the cost of freight; "the cost of . . . insurance;" the "costs of operating and maintaining CALCOT" that were "incurred in handling cotton;" and/or "any other expense incurred in handling cotton." The Marketing Agreement did not authorize such interest costs for Palm Bluffs Development to be deducted from amounts owed to members.

Plaintiffs alleged that wrongful acts committed include the following:

> "(A)   Starting in or about 1983, one method the defendants used to finance the concealed interest costs was to include the interest costs as deductions to members' interest charges from Advances when accounts were settled with members pursuant to ¶ 6. Calcot would show interest costs for the Palm Bluff Development as "interest" on sums charged to growers as interest on funds advanced to them. . .;
>
> (B)   Starting in or about 1983, Calcot blended in such interest costs for borrowings or other expenses for cotton marketing operations. These were identified as, and listed in the Audit Report as "Other Expenses-Interest;."
>
> (C)   Since the inception of the Palm Bluff Development project, defendants overcharged members in the Seasonal Pool in the form of increased overhead costs. The effect of this was to reduce the amounts otherwise payable to the members, on a per pound basis. In a typical crop year Calcot employed the United States Postal Service to fraudulently overcharge in its (1) initial advance, (2) first progress payment, (3) second progress payment, (4) third progress payment, and (5) final settlement;
>
> (D)   Defendants also misrepresented the use of the retained funds, which were not used for the benefit of the members."

---

PLAINTIFFS' MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

1

2

**III.      DEFENDANTS' FILING OF A SUMMARY AJUDICATION MOTION
VIOLATS THE COURT'S SCHEDULING ORDER**

3

4

      The Scheduling Order solely provided for a motion for class certification.  (Doc. 67.)
The Order limited discovery to issues related to class certification.  (*Id.*)

5

6

7

      The limitation on discovery was imposed at the defendants' insistence.  (Doc. 68 at § 6
pgs 16:20-20:14.)  Plaintiffs argued that discovery should not be limited.  (*Id.*)  Defendants did
not disclose any intention to move for summary adjudication.

8

9

10

11

12

      Under the Court's inherent powers or Rule 16(f) a court has broad authority to address
circumstance where a party violates the scheduling order.  (See, e.g., *Tower Ventures, Inc. v. City
of Westfield,* 296 F.3d 43, 46 (1st Cir. 2002); *In re Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984)
The range of sanctions available for violations is extremely broad: reprimand, costs, attorney's
fees, dismissal of an action, or entry of a default judgment.  (*Id.*)

13

14

15

      Plaintiffs are not seeking a sanction.  Instead, plaintiffs are seeking to enforce the terms
of the Scheduling Order, and avoid prejudice.  The summary adjudication motion should be
stricken.  In the alternative, the motion should be denied pursuant to Fed.R.Civ.P. 56(f)(1).

16

17

**A.      The Certification Determination Is Distinct From A Determination of Merits
and, Accordingly, The Motion For Summary Adjudication Is Inappropriate**.

18

19

20

21

22

      In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974) the Court held that courts
may not conduct a preliminary inquiry into the merits of a case to determine if the case may be
maintained as a class action.  Thus, "[i]n determining the propriety of a class action, the question
is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits,
but rather whether the requirements of Rule 23 are met."  (417 U.S. at 178.)

23

24

25

26

      A summary adjudication motion is a ruling on the merits.  As such, it is not authorized at
this time.  The fact that Calcot has now separated the challenge on the merits to a separate cross
motion for summary adjudication does not change the fact that defendants are improperly
requesting a ruling on the merits in connection with a class certification ruling.

27

/ / /

28

/ / /

PLAINTIFFS' MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

IV.     **THE COURT NEED VIEW ALL EVIDENCE IN THE LIGHT MOST FAVORABLE TO NONMOVING PARTY**.

The court need view all evidence, including reasonable inferences, in the light most favorable to the nonmoving party. (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587-588 (1986); see, e.g., *Wright v. Coughlin*, 132 F.3d 133, 138 (2d Cir. 1998).) Inferences need be drawn in favor of the nonmoving party. (*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 631 (9th Cir. 1987).)

V.     **THE MOVANT BEARS THE INTIAL BURDEN**.

The movant bears initial burden of production. (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).)

VI.     **PARAGRAPH 6 OF THE MARKETING AGREEMENT UNAMBIGOUSLY SUPPORTS PLAINTIFFS' CONTENTION**.

A.     **Paragraph 6 Expressly Limits Deductions To "The Cost Of Freight, Insurance, Storage, And Any Other Expense Incurred In Handling Cotton"**.

The language of an agreement, if clear and explicit and not conducive to absurd result, must govern its interpretation. (See, e.g., Cal. Civil Code § 1638; *Universal Sales Corp. v. California Press Mfg. Co.* (1942) 20 Cal. 2d 751.)

At ¶ 6, the Marketing Agreement provides:

> "CALCOT shall market cotton delivered by GROWER and there shall be **deducted from the proceeds of sales thereof the cost of freight, insurance, storage, and any other expense incurred in handling cotton, including** all costs of operating and maintaining CALCOT, together with retains for the Cotton Revolving Fund and other fund or funds as provided for in the Bylaws concerning cotton."

Here, the contract clearly specifies that all that may be deducted is "the cost of freight, insurance, storage, and any other expense incurred in handling cotton, including." The clause unambiguously supports plaintiffs' contention. One phrase Calcot ignores is "incurred in the handling of cotton, including. . . ." Calcot, without even a declaration, argues an expansive reading of the paragraph that is flatly contradicted by the bold faced operative language.

Plaintiffs' evidence establishes that this is the way Calcot's former CEO, David Farley, understood it. (Farley Decl. §§ 9, 10 & 11.) That is the way plaintiffs understood it. (Greg Palla

---

PLAINTIFFS' MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

1  Deposition, February 18, 2009, pgs 45:9-18;  46:23-47:4; 53:2-20; 54:4-55:11; & 100:15-101:10,

2  Exhibit "A" to the Declaration of Ralph B. Wegis (hereinafter "Wegis Decl."); John Andrews

3  Deposition, February 24, 2009; pgs. 8:7-24; 9:11-14;  33:13-18; 60:3-12; 102:3-14; & 106:14-

4  107:16, Exhibit "B" to the Wegis Decl.)

5      **B.    CALCOT Submitted No Evidence To Support Calcot's Interpretation, And**
       **Failed To Satisfy Calcot's Burden As The Moving Party**.

6

7      In support of the present motion, Calcot has submitted no evidence.  The Norris

8  declaration, actually filed by Calcot in connection with the prior briefing on the 12(b)(6) motions

9  and incorporated by reference, does not even dispute plaintiffs, or Mr. Farley's interpretation.  It

10  merely references certain documents that Calcot seeks to have judicially noticed.  (Docs. 135 &

11  47.)  The Norris declaration does not set forth Calcot's asserted understanding of the agreement.

12  It does not lay a foundation or connect the legal documents or law cited to Calcot's arguments

13  made in the points and authorities filed with the motion.  There is an utter failure of evidentiary

14  support for Calcot's contentions.

15      Accordingly, Calcot has failed to carry its burden as the moving party or, at the least,

16  there is a dispute of material fact for determination at the time of trial.

17      Further, and in the alternative, Calcot's reference to by-laws or other laws is misplaced.

18  Calcot is, in effect, arguing "secret" intent that was not part of the agreement or, at the least,

19  Calcot's subjective but undisclosed and unexpressed understanding.

20      Secret or hidden intent is irrelevant.  The law imputes to a person the intention

21  corresponding to the reasonable meaning of his or her language, acts, and conduct.  (*H.S.*

22  *Crocker Co., Inc. v. McFaddin* (1957) 148 Cal.App.2d 639, 643.)  In construing the mutual

23  intention of the parties, the objective, outward manifestation of mutual consent generally

24  governs.  (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.)

25      The parties' subjective intentions or beliefs are wholly immaterial.  (*Id.*, See, e.g., *Estate*

26  *of Wilson* (1976) 64 Cal.App.3d 786, 802.)  Calcot may not rely on extraneous documents, such

27  as the by laws, to contradict the plain language of the marketing agreement.

28  / / /

PLAINTIFFS' MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

**C.**     <u>Calcot's Contention Is Predicated on Ignoring Portions of The Agreement</u>.

A contract must be construed to give force and effect to every clause and every word in it. (Cal. Civ. Code § 1641; *Cole v. Low* (1927) 81 Cal App 633, 637.)  All parts, including every word, of an agreement are to be given effect if reasonably practicable.  (*Thackaberry v. Pennington* (1955) 131 Cal. App .2d 286.)

Calcot's interpretation ignores the words in the clause that directly contradict Calcot' interpretation.  Calcot ignores that only three categories of authorized deduction are enumerated, with that last one ("other expenses") specifically qualified and limited by "**in the handling of cotton**."  Calcot ignores this because it obviously defeats Calcot's contention.

**D.**     <u>All Reasonable Inferences Need Be Decided In Favor of The Nonmovant And Any Ambiguities Decided against Calcot</u>.

While plaintiffs submit that the subject language clearly and unambiguously supports plaintiffs' interpretation, plaintiffs would further, and in the alternative, submit that any ambiguity in the terms of the Marketing Agreement need be interpreted against Calcot because it is Calcot's agreement and Calcot created the ambiguity.  (Cal. Civ. Code. § 1654; *City of Hope National Medical Center v. Genentech, Inc.*, 43 Cal. 4th 375, 398 (2008).)

Similarly, all inferences need be resolved in favor of plaintiffs for purposes of summary adjudication (as discussed above).

**E.**     <u>Parol Evidence Supports Plaintiffs Position</u>.

Plaintiffs submit that no parol evidence is needed because the Marketing Agreement unambiguously supports plaintiffs' position.

If, however, the Court feels parol evidence would be helpful, plaintiffs would submit the following, without limitation:

- The declaration of David Farley, the former CEO of Calcot.  (Farley Decl. §§ 9, 10 & 11.)

- Calcot's present internet web page; which emphasizes how Calcot seeks to be as efficient as possible and return as much money to the grower as possible.  This position directly contradicts Calcot's position, one asserted only in Calcot's Points and Authorities, that the huge real estate losses could legitimately be passed onto its members.  (Wegis Decl. para. 7 and Exh. "C".)

8

PLAINTIFFS' MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

- The evidentiary facts alleged in paragraphs 20 and 25 of the SAC. These are admissions from Calcot's former web page; quoted verbatim therein (and are not being referenced as allegations but as party admissions). Plaintiffs unfortunately did not download such admissions and will need to obtain those in discovery. Because it was merit based discovery, plaintiffs would reference plaintiffs request under Rule 56(f).

- Plaintiffs have been precluded from conducting merit based discovery at all times and have been prejudiced in collecting and investigation parol evidence on the assertions made in Calcot's Separate Statement. Plaintiffs further reference Rule 56(f) as set forth in more detail in the concurrently filed declaration of Ralph Wegis.

- Disputes as to the meaning or credibility of extrinsic evidence raise a jury question. (*See, e.g., City of Hope National Medical Center v. Genentech, Inc.,* 43 Cal. 4th 375, 395-395 (2008).)

### i. __Out of An Overabundance of Caution, Plaintiffs Have Also Filed A Rule 56(f) Declaration__.

Further, and in the alternative, plaintiffs have requested the right to conduct merit based discovery should the Court not have a sufficient basis to deny the motion based on the showing presented in this opposition. Whether to allow further discovery under Rule 56(f) is a subject committed to the district court's discretion. (*Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 920 (9th Cir. 1996).)

The stage of the litigation is an important consideration. When "a summary judgment motion is filed early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." (*Burlington Northern Santa Fe Railroad Co. v. Assiniboine & Sioux Tribes of the Ft Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).)

Here, while it is not chronologically early in the litigation, it is "early" in the litigation because merit based discovery has been precluded by the Court's scheduling order. Plaintiffs have been prejudiced, and their due process denied, by defendants' tactics. Plaintiffs have filed the declaration of Ralph Wegis further addressed to this request.

/ / /

/ / /

/ / /

PLAINTIFFS' MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

**VII.    CALCOT'S CONTENTION THAT IT WAS AUTHORIZED UNDER ITS' BY LAW OR UNDER LAW TO ENGAGE IN PALM BLUFFS MISCHARACTORIZES PLAINTIFFS' CONTENTIONS AND CONFUSES A DERIVATIVE ACTION WITH A DIRECT ACTION.**

Calcot's P & As summarizes Calcot's argument as follows:

> "Further, as a matter of law, the scope and depth of authority granted to Calcot under California's Food and Agriculture Code and Calcot's By-laws clearly permitted Calcot to borrow money, buy, and sell and develop property related to the Palm Bluffs Development once that property stopped being used for a cotton compress and warehouse facility. The fact that plaintiffs have a post hoc disagreement Calcot with that decision may allow them to bring a derivative suit but not a class action, since the gravamen of the Complaint is over the business decision in choosing how to dispose of what had become surplus corporate property." (Doc. 136, 9:6-12)

The above statement, as is Calcot's Separate Statement, is irrelevant to plaintiffs' claims. Calcot also glosses over the fact that its own former CEO, David Farley, was gravely concerned about the accounting irregularities (i.e., concealment) and the fact members were mislead. (Farley Decl. paras. 5 -19.)  It was no a post hoc disagreement.  It was concealed, and a fraud.

Calcot, again, mischaracterizes plaintiffs' claims.  Plaintiffs' claims are direct actions for breaching contracts with plaintiffs, concealing such breaches, and for fraud and related claims. Calcot, again, confuses a derivative action, which this is not, with a claim for a direct violation of duties to the plaintiffs and the class they seek to represent.

A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when the injury is caused to the corporation that may not otherwise be redressed because of the failure of the corporation to act.  (*See, e.g.*, *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106-107.)  For example, in an action for breach of fiduciary duty arising from alleged management improprieties and the attendant decline in the corporation's stock value, the gravamen of the complaint was harm to the corporation and thus the action was a derivative action that the plaintiff lacked standing to pursue.  (*See, e.g.*, *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 309, 312-315.)

A shareholder's suit is non-derivative or individual when it is brought to enforce a right against the corporation which the stockholder possesses as an individual.  (*See, e.g.*, *Jones v.*

*H.F. Ahmanson & Co*. (1969) 1 Cal.3d 93, 107-108; *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 296-297; *Denevi v. LGCC* (2004) 121 Cal.App.4th 1211, 1223.)  For a shareholder to obtain a personal right of action there must be relations between him or her and the defendant independent of those which the shareholder derives through his or her interest in the corporate assets and business or, here, membership in the non-profit.  (*Shenberg v. DeGarmo* (1943) 61 Cal. App. 2d 326, 333.)

Here, there plaintiffs claims are individual.  Plaintiffs alleged that they were personally defrauded by virtue of their treatment in marketing their cotton via Calcot.  The damages are not the devaluation or damages to the non-profits value (a concept that appears inapplicable to non-profits as well).  The damages sought are those that flow from a breach of contract and fraud by Calcot to the members.  This is not a derivative suit.[2]

**VIII.    <u>CONCLUSION</u>.**

Plaintiffs request that for the foregoing reason the motion be denied.

DATED:  July 24, 2009                    LAW OFFICES OF RALPH B. WEGIS, P.C.


<u>/s/ Michael J. Stump, Esq.</u>
RALPH B. WEGIS, Esq.
MICHAEL J. STUMP, Esq., counsel for plaintiffs, Andrews Farms and Greg Palla, individually and on behalf of the class

---

[2] It should be noted that individuals in the putative class, including the named plaintiffs, could not also bring a derivative claim.  There is likely an inherent conflict between proceeding with individual claims and class claims.  (*See, e.g*., *Ryan v. Aetna Life Ins. Co*., 765 F. Supp. 133, 135-137 (S.D.N.Y. 1991); *Koenig v. Benson*, 117 F.R.D. 330, 334 (E.D.N.Y. 1987).)

PLAINTIFFS' MEMORANDUM OF POINT AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION