IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREWS FARMS, et al., | CASE NO. CV-F-07-0464 LJO DLB |
| Plaintiffs, | **ORDER ON PLAINTIFFS' PARTIAL SUMMARY JUDGMENT MOTION** |
| vs. | (Doc. 170) |
| CALCOT, LTD., EADIE AND PAYNE, and ROBERT W. NORRIS, | |
| Defendants. / | |

### INTRODUCTION

Plaintiffs Andrews Farms and Greg Palla and members of a class certified as described below (collectively "Plaintiffs") move for partial summary judgment and summary adjudication against defendant Calcot, Ltd ("Calcot") for constructive fraud and deceit based on fiduciary relationship (third cause of action); (2) accounting (fourth cause of action); and (3) breach of contract (fifth cause of action). In addition, Plaintiffs move for summary adjudication in their favor on thirty (30) of Calcot's affirmative defenses. Plaintiffs argue that this Court's prior orders–to deny a motion to dismiss and to deny summary judgment–establish factual elements of their claims based on the "law of the case" doctrine. Plaintiffs' argument demonstrates a lack of understanding of the Federal Rules of Civil Procedure and well-settled case law regarding federal law and motion practice. In addition, Plaintiffs fails to bear their burden to establish why judgment should be entered in their favor on their causes of action and Calcot's 30 affirmative defenses. For the following reasons, this Court GRANTS summary adjudication on two facts, as identified in this order below, and denied all other requested relief.

1

# BACKGROUND[1]

## Relationship of Parties

Calcot is a cotton marketing cooperative, organized under Chapter 1, Division 20 of the California Food and Agriculture Code. Currently, Calcot markets cotton in California, Arizona, New Mexico, and Texas. Plaintiffs are a certified class defined as follows:

> All persons or entities who, as of May 21, 2009, were former members of Calcot, who marketed their cotton in the Calcot Seasonal Pool, who have taken Advances from Calcot upon delivering their cotton to Calcot and have had interest deducted from their payments for such cotton and/or deductions and or charges for such secret losses for the costs of operating and maintaining Calcot from the proceeds of their cotton sales at any and all times since January 1, 1983 or otherwise had interest costs of the Palm Bluff Development deducted from their settlements for the sale of cotton. Specifically excluded from this definition are persons or entities who, as of May 21, 2009, were then presently marketing their cotton with Calcot.

Order on Plaintiffs' Renewed Class Certification Motion, p. 1-2. (Doc. 159).

Members of Calcot enter into a Seasonal Marketing Pool by executing a Marketing Agreement. Paragraph 6 of the Marketing Agreement entered between Calcot and its members provides:

> CALCOT shall market cotton delivered by GROWER and there shall be deducted from the proceeds of sales thereof the cost of freight, insurance, storage, and any other expense incurred in handling, cotton, including all costs of operating and maintaining CALCOT, together with retains for the Cotton Revolving Fund and other fund or funds as provided for in the Bylaws concerning cotton.

Pursuant to the Marketing Agreement, Calcot advances the grower/members money when the grower delivers his or her cotton to Calcot's warehouse. The grower is paid an advance against the expected sales price of each bale of cotton ("Initial Advance"). As sales of the member's cotton are "booked" and receivables collected, a series of additional payments are made ("Progress Payments"), through the end of the fiscal year. At the end of the fiscal year, a final settlement is made, to pay the grower/member the remainder of any sums not paid previously.

Calcot also employs a seasonal per unit qualified retains system. In each crop year in which a grower participates as a member of Calcot, the grower/member pays qualified retains of $4.00 per bale of cotton delivered. This amount is reached by a "primary retain" of $3.00 per bale and a "secondary retain" of $1.00 per bale. The funds Calcot retains from its members are returned five years later. When

---

[1] The Court relies on the evidence presented by the parties in the record and cites to the most relevant.

returning the seasonal per unit retains, Calcot sends this message to its members: "Your investment in Calcot, represented by these retains, has been used for working capital and for facilities as warehouses, offices, and cotton classing equipment. These vital elements of our total marketing program continue to work for your benefit."

**Pinedale/Palm Bluffs Development**

This action arises from Calcot's development of real estate formerly used to warehouse cotton. Since 1951, Calcot has owned land in Pinedale, an unincorporated county island located in northern Fresno, California. Calcot originally used the Pinedale location for cotton storage and warehousing. In1979, Calcot sought to relocate its warehouse facilities to the west of the Central Valley in response to the shift of cotton acreage to areas west of Pinedale. In addition, the City of Fresno was expending north, close to the Pinedale. Thus, Calcot's Board of Directors unanimously passed a resolution to authorize Calcot management to sell or exchange the Pinedale plant and to build the necessary replacement warehouses.

Calcot began expanding its Pinedale property by acquiring adjacent properties. In August and September1979, Calcot's Board of Directors approved the purchase of a telephone company property, steel structure property and thirteen houses with frontage on Herndon Avene. In 1980, Calcot re-acquired parcels it has previously sold to control the frontage of the property along Herndon Avenue. Calcot acquired these properties with the belief that doing so would make the property more sellable, and would put Calcot in a better position to negotiate the sale of the Pinedale property.

In the 1980's, Calcot discovered that Pinedale's soil and groundwater was contaminated with an industrial solvent known as trichloroethylene (TCE). The discovery of the environmental contamination caused an abrupt halt and lengthy delay in Calcot's efforts to sell the property. Calcot spent nearly ten years investigating, monitoring, and litigating the environmental contamination. Calcot recovered $4.3 million from Vendo Company, the source of the contamination, with an agreement that Vendo Company would be responsible for further remediation of the area and underground aquifer. Calcot also settled with its former insurers for $4.5 million.

In 1997, Calcot renewed its efforts to sell the Pinedale property. Calcot rjected offers made on the property, as they were considered too low. To add value, and with the intention to make the property

3

more profitable, Calcot's Board of Directors determined that Calcot would develop the land into a commercial development. The development in Pinedale became known as the Palm Bluffs Development. Calcot entered into an agreement with the City of Fresno that allowed the City to reimburse Calcot $7.5 million for improvements made to the property. The City issued Mello-Roos bonds to fund the infrastructure costs. Those infrastructure costs not covered by the Mello-Roos bonds were treated as expenses to the cooperative. Costs associated with the Pinedale and Palm Bluffs project were recorded in Calcot's audited financials, which were distributed annually to Calcot's Board of Directors and were available to a Calcot member upon request.

Calcot ceased its cotton warehousing operation at the Palm Bluffs location in 1997. The property was developed commercially. Some of the lots have been sold.

## Pinedale/Palm Bluffs Charges to Members

Plaintiffs allege that Calcot's "venture into real estate development" ended in "financial disaster." Plaintiffs claim that Calcot abused the seasonal per unit retains system, and "saddled growers with secret retains in excess of $23,000,000 utilized to pay interests costs" for development of the Palm Bluffs property, costs unrelated to the handling and marketing of cotton. Plaintiffs claim that Calcot has expended around $100,000,000 in developing and carrying the Palm Bluffs Development, and disguised $23,000,000 in its interest costs as interest costs incurred in the handling and marketing of members' cotton. Plaintiffs contend that Calcot, with the help of Eadie & Payne, Calcot's accounting firm, improperly concealed and charged costs related to the Palm Bluffs Development to all members under the Marketing Agreement. Plaintiffs contend that Calcot's charges, and concealment thereof, constitutes constructive fraud of a fiduciary and a breach of contract. Plaintiff demands damages and an accounting of the charges for the alleged fraud and breach of contract.

The undisputed facts indicate that grower/members of Calcot paid for some expenses related to the Pinedale/Palm Bluffs project. For example, Robert Norris ("Mr. Norris"), former CEO and President of Calcot who had direct responsibility for the project admitted that growers were charged for interest payments. In his deposition in connection with the Farley litigation, Mr. Norris testified as follows:

> Q. To the extent that interest payments are made which are expensed, that money comes out of what would otherwise be going into the grower's pocket that year, correct?

| | |
|---|---|
| 1 | A. That is no different than any other expense. |
| | Q. So is the answer yes? |
| 2 | A. Yes. Yes. |

Norris Depo., Volume II, p. 218. The Palm Bluff Development Status Update 25th Anniversary Review, prepared by Leo Dwyer ("Mr. Dwyer") on May 12, 2003 ("Dwyer Report"), contains an estimate of the costs Calcot charged to the Plaintiffs for the Palm Bluffs project throughout the 25 year time period. Mr. Dwyer notes that "[i]nterest carry was only charged to the project for two brief periods–once in the early80's and then again in the late 90's." Dwyer Report, p. 10; *see also*, Dwyer Report, p. 5. Mr. Dwyer then explains his opinion on how much Plaintiffs, as member growers during the relevant time period, paid for the Palm Bluffs project:

> To get an estimate of the carry cost paid by growers, I have taken the average of funds employed during each year and applied a cost of funds at the time interest rate–as conservative assumption given the risk involved in a land development project. I have then adjusted the "Implied cost of carry" to subtract out interest that was actually charged to the project (Capitalized again see page 5) as well as giving an additional credit because the $18m bond financing we received was actually borrowed at a rate below the prime rate.
>
> This result is an estimate of some $23.3m of interest paid by growers to carry the project over the 25 year period–including some $800k in FY '03 through the end of April.. [sic]
>
> In addition to the interest there have been some $.07m of project related expenses–real estate tax and association fees–paid by growers (As opposed to capitalized) in recent years.

Dwyer Report, p. 10. An April 7, 2003 email from Miguel Mory, assistant to Calcot's Treasurer/Chief Internal Accountant to Mr. Dwyer, reads:

> I asked Larry and he said that neither [Palm Bluffs Interest and RE Tax] is capitalized because they don't provide any future value. So in effect they are being expensed as operating expenses and consequently picked up by each year's pool. Miguel.

Wegis Decl., Exh. K. Calcot does not dispute that it charged its members for costs related to the Palm Bluffs project.

The evidence of the amount that was charged to the members varies. As set forth above, Mr. Dwyer's report estimates $23.3 million of interest in carrying costs and $.07 million in projected related expenses were paid by the growers. In a report critical of the Dwyer Report, Eadie & Payne audit partner John Prentice ("Mr. Prentice") concluded: "Dwyer's estimated carry cost of $23.3m may be overstated by 40%. That still leaves a carry of $14.0m. However, over the 23 years at a pool average of $597m

5

per year (or $13.7b in total grower payments, the $14.0m is one tenth of 1%..." Memo from John Prentice to Robert Dowd, Wegis Decl., Exh. L.

In this motion, the parties dispute whether the charges to the growers were authorized by Calcot's contractual agreement, Bylaws, and statutory authority, and whether the charges were disclosed properly to the members.

**Whether Calcot was Authorized to Charge Members**

Calcot's Articles of Incorporation state the purpose of Calcot:

(A)  to promote, foster and encourage the business of marketing cotton, cotton seed, and other cotton products and by-products cooperatively and to eliminate speculative waste, and to stabilize the marketing of such products.

(B)  to engage in any activity in connection with the harvesting, ginning, grading, handling, processing, storing, warehousing, compressing, and marketing of cotton and cotton products and by-products of the Corporation and . . . and in the manufacturing, selling and furnishing to its members and non-members of supplies, and financing any of the above enumerated activities specified herein.

In conjunction with the Articles of Incorporation, Calcot's Bylaws state the same purpose:[2]

"The purpose of the Association shall be to render service to its members at cost in connection with the members' agricultural pursuits within the limitations of the Cooperative Act. Such services shall include (but shall not be limited to) marketing of members' products, handling or processing such products." (Doc. 47, Exh. B to Norris Decl., Bylaws p. 42 of 87.)

As set forth above, Paragraph 6 of the Marketing Agreement entered between Calcot and its members provides:

CALCOT shall market cotton delivered by GROWER and there shall be deducted from the proceeds of sales thereof the cost of freight, insurance, storage, and any other expense incurred in handling cotton, including all costs of operating and maintaining CALCOT, together with retains for the Cotton Revolving Fund and other fund or funds as provided for in the Bylaws concerning cotton.

Plaintiffs argue that the charges were impermissible. Plaintiffs contend that charges related to the development of real estate are unauthorized because they are unrelated to the handling of cotton. Calcot

---

[2] Section 54111 of the Food and Agricultural Code requires such associations adopt a set of bylaws. Cal.Food&Ag §54111 ("Each association shall, within 30 days after its incorporation, adopt for its government and management, a code of bylaws, not inconsistent with this chapter.") The bylaws act as a contract with the members. "The constitution and rules and by-laws of a voluntary unincorporated association constitute a contract between the association and its members, and the rights and duties of the members as between themselves and in their relation to the association, in all matters affecting its internal government and the management of its affairs, are measured by the terms of such constitution and by-laws." *American Soc. of Composers, Authors and Publishers v. Superior Court of Los Angeles County*, 207 Cal.App.2d 676, 689, 24 Cal.Rptr. 772, 780 (1962).

6

argues that the costs of maintain the Pinedale property both were related to the handling of cotton and authorized by statute, its Bylaws, and Paragraph 6 of the Marketing Agreement.

**Whether Calcot improperly failed to disclose the charges**

The parties dispute whether Calcot's accounting practices of the carrying costs and related expenses constituted an improper non-disclosure. In addition, the parties dispute whether the charges related to the Palm Bluffs project were transparent.

Plaintiffs assert that the non-capitalized interest expenses were not fairly disclosed, tracked or segregated on Calcot's books. In addition, Plaintiffs contend that the true financial performance of the Palm Bluffs project was never disclosed. Pl. Memo., 8-9, Pl. SUF 21. Plaintiffs presents evidence that the accounting of the carrying costs charged to the growers was not included in the Palm Bluffs' project accounting. For example, Plaintiffs point to Mr. Norris' testimony that the interest costs were "not segregated" from the "general overall interest expense." In addition, in emails to Mr. Mory, and in his report, Mr. Dwyer questioned the accounting practices. Mr. Dwyer opined that: "I think we are fooling ourselves when we talk about selling the land at a 22% profit (which in itself is an extremely low margin for a speculative land development project) because we are not allocating the cost to carry to the project." Wegis Decl., Exh. K. In addition, Plaintiffs present evidence that Calcot intentionally avoided disclosing the issue of the costs with its members.

Calcot disputes that the accounting practices were improper. Calcot submits evidence that the accounting decisions were made on advice from their Eadie & Payne accountants. Moreover, Mr. Prentice of Eadie & Payne opines that:

> the accounting treatment of interest related to such a project conforms to Generally Accepting Accounting Principles (GAAP). GAAP indicates that interest incurred during the development phase of a project should be capitalized (but not to an amount greater than the fair market value of the project). Since the project was not undergoing development for many years, no capitalization was appropriate. Also under GAAP once a project is ready for sale, all interest is expensed.

Wegis Decl., Exh. L. An April 8, 2003 email from Miguel Mory to Mr. Dwyer explains that "the decision no[t] to capitalize the [interest and carry cost] expenses were made because the auditors felt the expenses did not have any future value." Wegis Decl., Ex. K. In addition, Calcot submits evidence that the actions of Calcot's Board of Directors related to the Pinedale/Palm Bluffs project were disclosed and

approved by Calcot members each year.

## *Farley* Litigation

Significant portions of the evidence offered in support of this motion by Plaintiffs is evidence developed in *Farley v. Calcot*, S-1500-CV-251326 (Sup. Ct. Kern County) ("*Farley* litigation"). David Farley ("Mr. Farley") is a former Chief Executive Officer of Calcot. In the *Farley* litigation, Mr. Farley sued Calcot for wrongful discharge. Mr. Farley alleged, *inter alia*, that Calcot fired him under pre-text for advocating that the charges paid by the growers to carry the Pinedale/Palm Bluffs project should be disclosed. The *Farley* litigation was resolved by a non-confidential settlement for $1,650,000 paid to Mr. Farley.

Calcot objects to the admission of depositions from the Farley Litigation pursuant to Fed. R. Civ. P. 32(a)(8). Calcot contends that this Court should use its discretion to deny admission of these deposition testimonies because the actions differ substantially and the motive for defense, rehabilitation and cross-examination of deponents differed. *See Hub v. Sun Valley Co.*, 682 F.2d 776, 778 (9th Cir. 1982). Although the issues are similar, this Court agrees that the motive for defense and cross-examination at the deposition differ. Nevertheless, an "interview given under penalty of perjury may, however, be treated as a declaration–and therefore may be considered in ruling on a motion for summary judgment, Fed. R. Civ. P. 56(e)–even though Rule 32(a) prevents its use as a formal deposition." *S.E.C. v. Phan*, 500 F.3d 895, 913 (9th Cir. 2007). Accordingly, this Court admits and considers the deposition testimonies in this motion as declarations.

## Procedural

Plaintiffs initiated this action on January 31, 2007. Plaintiffs proceed on their second amended complaint to allege ten causes of action against defendants: (1) fraud; (2) breach of fiduciary duty; (3) constructive fraud and deceit based on a fiduciary relationship; (4) accounting; (5) breach of contract; (6) fraud and deceit–intentional misrepresentation of material fact; (7) negligent misrepresentation; (8) violation of RICO (18 U.S.C. §1962(b)); (9) violation of RICO (18 U.S.C. §1962(a)); and (10) violation of RICO (18 U.S.C. §1962(c)).

Although Plaintiffs initiated this action over three years ago, the parties have conducted no discovery on the merits of Plaintiffs' claims. The delay in litigation was caused by a heavy law and

motion practice between the parties, including: removal to federal court (March 23, 2007), motions to dismiss complaint (April 11, 2007), motion to strike amended complaint (August 15, 2007), motions to dismiss amended complaint (August 15, 2007), motion to certify class (March 3, 2009), renewed motion to certify class (May 21, 2009 and May 29, 2009), defendants' motion for summary judgment (June 15, 2009) and plaintiffs' current motion for summary judgment (November 25, 2009). In 2008, the parties conducted discovery related to Plaintiffs' class certification motion.

To support their summary judgment motion, Plaintiffs rely heavily on two of this Court's previous orders to establish what they argue is the "law of the case:" (1) this Court's October 9, 2007 Order to Deny Calcot's Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 59) ("MTD Order"); and (2) this Court's August 5, 2009 Order to Deny Defendants' Summary Judgment Motion (Doc. 159) ("MSJ Order").

Plaintiffs moved for summary judgment on November 25, 2009. Calcot opposed the motion on January 14, 2010. On that day, Eadie & Payne filed a separate opposition, and joined Calcot's opposition. Calcot joined Eadie's opposition on January 15, 2010, and filed a supplemental opposition on January 19, 2010. Plaintiffs' requested a continuance for their reply and waived procedural objections to Calcot's supplemental opposition, which was filed untimely. Plaintiffs replied to Calcot's and Eadie & Paynes's oppositions on February 3, 2010. This Court found these motions suitable for decision without a hearing, vacated the February 16, 2010 hearing pursuant to Local Rule 230(g), and issues the following order.

## STANDARD OF REVIEW

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party seeking summary judgment/adjudication bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and on which the non-moving party bears the burden of proof at trial. *Id*. at 322. "The judgment sought

should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed. R. Civ. P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set out specific facts showing that there is a genuine issue for trial." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

## DISCUSSION

### Arguments Based on this Court's Previous Orders

Plaintiffs' argument relies primarily on this Court's prior orders. Plaintiffs assert that this Court's previous orders amount to "findings of fact" that require summary adjudication or judgment in their favor. Plaintiffs argue that this Court's previous orders "may be relied upon by plaintiffs to establish the merits of this motion." Pl. Memo., p. 15. Specifically, Plaintiffs contend that the Court's prior orders establish as a matter of fact and law that Calcot breached its contract and that a fiduciary relationship existed between the parties.

Plaintiffs' arguments based on this Court's previous orders are meritless. This Court's order to deny summary judgment does not establish "findings" of either fact or law. Thus, Plaintiffs' may not

rely on this Court's MSJ Order to establish the purported findings. Similarly, this Court's order to deny summary judgment does not establish the "law of the case." Finally, Plaintiffs may not rely on this Court's order to deny Calcot's motion to dismiss to establish factual elements of their claims. Accordingly, this Court rejects Plaintiffs' baseless arguments that rely on this Court's prior orders.

**Order to Deny Summary Judgment Does Not Establish "Findings"**

Plaintiff's contend that under Fed. R. Civ. P. 56(d)(1), they are entitled to summary adjudication based on the following statements in the analysis of this Court's MSJ Order:

- An association may only make deductions from the amounts owed to their members as are permitted by the statute or the contracts. (MSJ Order, p. 10)
- Both the Articles [of Incorporation] and Bylaws contain provisions which state the purpose of Calcot as the marketing of members' products. (MSJ Order, p. 7)
- Likewise, the Marketing Agreement states "Calcot shall market the cotton delivered to Grower." (MSJ Order, p. 8) (quoting Marketing Agreement, 6)
- To these ends, the Articles, Bylaws, and Marketing Agreement are consistent with statutory authority. (MSJ Order, p. 8)
- These statutory provisions infer engaging in business unrelated to "marketing or selling members' products" is outside the permissible scope and inconsistent with members' agreements. (MSJ Order, p. 8)
- The Bylaws limit financing to "financing any of the above enumerated activities specified herein." Real estate development is not "any activity in connection with the harvesting, ginning, grading, handling, processing, storing, warehousing, compressing, and marketing of cotton. (MSJ Order, 8)
- In short the statutory language, the Articles of Incorporation, and the Bylaws do not include development of real estate for non-cotton related activities. (MSJ Order, 9).

Plaintiffs' claim that these statements are "findings" of this Court misunderstands both the MSJ Order's conclusion and its effect.

The "denial of a motion for summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of a claim. It is strictly a pretrial order that decides only one thing–that the case should go to trial." *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193 (1966). Similarly, there is "no merit" to Plaintiffs' claims that this Court's MSJ Order to deny Calcot's summary judgment was a ruling that established the merits of Plaintiffs' claims, "or that such a ruling was the law of the case." *Id.* This Court denied Calcot's summary judgment motion because Calcot failed to set forth evidence to establish that, *as a matter of law*, it had authority to develop real estate under the Articles of Incorporation, By-laws, and Marketing Agreement. MSJ Order, p. 11. This Court ruled that Calcot failed to carry its burden to establish its

claims as a matter of law. "Such a denial merely postpones decision of any question; *it decides none*." *Dessar v. Bank of America Nat. Trust. and Sav. Ass'n*, 353 F.2d 468 , 470 (emphasis added).

Thus, contrary to Plaintiffs' repeated assertions, the Court's MSJ Order to deny Calcot's summary judgment motion "did nothing more than it purported to do, that is, refuse to grant the motion." *Id*.; *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986) ("An order denying a motion for partial summary judgment is merely a judge's determination that genuine issues of material fact exist."). Accordingly, Plaintiffs are not entitled to summary adjudication based on the misinformed reliance on this Court's order to deny summary judgment.

Moreover, Plaintiffs' reliance on Fed. R. Civ. P. 56(d)(1) is misplaced. Plaintiffs argue that based on Fed. R. Civ. P. 56(d)(1), the above-quoted statements in this Court's MSJ Order "must be treated as established in the action." Pl. Memo., p. 15. To be treated as "established," however, those facts must be contained in an "order specifying what facts...are not genuinely at issue. The facts so specified must be treated as established in the action." Here, the Court issued no order to specify what facts are not genuinely at issue. Rather, the Court ruled that Calcot failed to carry its burden to establish the merits of its argument–and defense–as a matter of law.

**Order to Deny Summary Judgment is Not "Law of the Case"**

Similarly, Plaintiffs' reliance on the "law of the case" doctrine is misguided and confused. The "law of the case" doctrine:

> is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition.

*Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (quoting *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d. 703 F.2d. 703, 715 (9th Cir. 1990)). "Under the 'law of the case' doctrine, one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991) (quoting *Kimball v. Callahan*, 590 F.2d 768, 771 (9th Cir.), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979)). "It merely expresses the practice of courts generally to refuse to reopen that which has been decided, and is not a limitation of the courts' power." *Merrit*, 932 F.2d at 1320; *United*

*States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). The oft-repeated formulation of this doctrine is:

> The prior decision of legal issues should be followed on a later appeal unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

*Merritt*, 932 F.2d at 1320; *see also*, *Hegler v. Borg*, 50 F.3d 1472 (9th Cir. 1995); *League of Women Voters of California v. F.C.C.,* 798 F.2d 1255, 1256 (9th Cir. 1986).

The "law of the case" doctrine applies only to issues considered and actually decided by the first court. *Hegler*, 50 F.3d at 1475 (citing *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995)). "Although the doctrine applies to a court's explicit decisions as well as those issues decided by necessary implication, it clearly does not extend to issues an appellate court did not address." *Id*. Simply put, the "law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings of the same case." *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993).

A denial of a summary judgment motion does not constitute a final disposition of any issue in the case and does not become the "law of the case." An "order denying a motion for summary judgment is generally interlocutory and subject to reconsideration by the court at any time." *Preaseau v. Prudential Ins. Co. of America*, 591 F.2d 74, 79-80 (9th Cir. 1979). As the Ninth Circuit explained in *Dessar v. Bank of America Nat. Trust. and Sav. Ass'n*, 353 F.2d 468 (9th Cir. 1965):

> There is no merit to appellant's claims that the denial of appellee's first motion for summary judgment was a ruling that the trust was invalid, or that such a ruling is the law of the case. The order does not purport to decide the question. It merely denies the motion because, in the court's then view, there were 'issuable facts.' Such a denial merely postpones decision of any question; it decides none. To give it any other effect would be entirely contrary to the purpose of the summary judgment procedure. The court did nothing more than it purported to do, that is, refuse to grant the motion.

*Id*. at 470 (emphasis added). The denial of a summary judgment motion has no preclusive effect, does not merge into a final judgment, and is an interlocutory, unappealable order that can be reviewed by the district court at any time before final judgment is entered. *Eastern Mountain Platform Tennis, Inc. v. Sherwin Williams, Co.*, 40 F.3d 492, 497 (1st Cir. 1994); *see also*, *Local Union NO. 490, United Rubber, Cork, Linoleum and Plastic Workers v. Kirkhill Rubber Co.*, 367 F.2d 956, 959 (9th Cir. 1966) (an order

denying motion for summary judgment is not an appealable order). Accordingly, this Court rejects Plaintiffs' "law of the case" arguments.

### Order to Deny Motion to Dismiss Does Not Establish Factual Dispute

Moreover, Plaintiffs erroneously rely on this Court's order denying Calcot's motion to dismiss to establish factual elements of his claims. Plaintiffs argue that "there is no dispute of material fact" that there was a fiduciary relationship between Calcot and its members because this "Court found that plaintiffs' allegations adequately plead the existence of a fiduciary relationship." Pl. Mem., p. 15. Plaintiffs further rely on this Court's MTD order in its accounting claim. Pl. Memo., p. 16. Plaintiffs' ill-conceived arguments misunderstand both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56 standards of review.

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). Thus, in this Court's order to deny Calcot's motion to dismiss, the Court presumed the truthfulness of Plaintiffs' allegations and considered only whether they were plausible.

By contrast, the Court does not accept as true Plaintiffs' allegations in a Fed. R. Civ. P. 56 motion. Instead, a party seeking summary judgment/adjudication pursuant to Fed. R. Civ. P. 56 bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. To satisfy this burden, Plaintiffs must either: (1) present evidence that negates an essential element of the nonmoving party's case; or (2) demonstrate that the nonmoving party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and on which the non-moving party bears the burden of proof at trial. *Id*. at 322.

Thus, whether Plaintiffs pled adequately the existence of a fiduciary relationship to survive a Fed. R. Civ. P. 12(b)(6) motion is irrelevant and insufficient to establish the burden a moving party bears in a Fed. R. Civ. P. 56 motion. A denial of a motion to dismiss establishes only that the claims are plausible; it does not establish the merits of the claim. *See, Podell v. Citicorp Diners Club, Inc.,* 859 F. Supp. 701, 704 (S.D. NY 1994) (motion to dismiss challenges formal legal sufficiency of claim, and not its underlying facts; consideration of motion does not amount to consideration of merits of case); *see also, Pearson v. Dennison*, 353 F.2d 24, 28 (9th Cir. 1965) (denial of a motion to dismiss is not the "law of the case"). Accordingly, Plaintiffs' arguments that rely on this Court's MTD Order fail.

## **Plaintiffs' Claims**

The Court turns now to Plaintiffs' arguments unrelated to the Court's prior orders. Though Plaintiffs contend they are entitled to summary judgment or adjudication on their claims for constructive fraud and deceit based on fiduciary relationship (third cause of action), accounting (fourth cause of action), and breach of contract (fifth cause of action), Plaintiffs fail to set forth the elements of the claims and fail to bear their burden to establish that there are no disputed material facts as to the elements of those claims. Accordingly, Plaintiffs' motion for summary adjudication on its third, fourth, and fifth causes of action is denied.

## **Fraud and Deceit Based on Fiduciary Relationship**

Plaintiffs' third cause of action is styled "constructive fraud and deceit based on fiduciary relationship." Constructive fraud arises on a breach of a duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by latter to his prejudice. *Tyler v. Children's Home Society*, 29 Cal. App. 4th 511, 548 (1994). Constructive fraud:

> is a unique species of fraud applicable only to a fiduciary or confidential relationship...[A]s a general principle constructive fraud comprises any act, omission, or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud even though there is no fraudulent intent.

*In re Harmon*, 250 F.3d 1240, 1249 (9th Cir.2001) (quoting *Assilzadeh v. California Federal Bank*, 82

Cal. App. 4th 399, (2000)). The elements for a cause of action for constructive fraud are fiduciary relationship, nondisclosure, reliance, and resulting injury. *Younan v. Equifax Inc.*, 169 Cal. Rptr. 478 (1980). "Unlike fraud and undue influence, a constructive fraud claim allows relief for negligent omissions constituting breach of a duty in a confidential relationship." *Tyler*, 29 Cal. App.4th at 548. To prevail on their motion, Plaintiffs must establish that there are no disputed material facts as to whether a fiduciary relationship between the parties existed, whether Calcot's acts constituted a non-disclosure, whether Plaintiffs' relied on that disclosure, and resulting injury.

As to the first element, Plaintiffs fail to establish that a fiduciary relationship existed between the parties. The Court reproduces Plaintiffs' entire argument as to the existence of a fiduciary relationship:

> This Court found that plaintiffs' allegations adequately plead the existence of a fiduciary relationship. (Order Dated October 9, 2007, Pgs. 13:21-15:1, at Doc. 59). Accordingly, based on admitted facts a fiduciary relationship exists. (PSSUMF No. 1).

Pl. Memo., p. 15. As discussed more fully above, Plaintiffs may not rely on the Court's MTD Order to establish the fiduciary existence of the fiduciary relations. The plausibility of the allegations in a complaint is irrelevant and insufficient in a Fed. R. Civ. P. 56 motion. In addition, Plaintiffs failed to establish by legal authority that the relationship is a fiduciary as a matter of law.

The Court notes that the "existence of a fiduciary relation is a question of fact which properly should be resolved by looking at the particular facts and circumstances of the relationship at issue." *Bear Stearns & Co. v. Daisy Sys. Corp.*, 97 F.3d 1171, 1178 (9th Cir. 1996). The "existence of a confidential or fiduciary relationship depends on the circumstances of each case and is a question of fact for the fact trier." *Kudokas v. Balkus*, 26 Cal. App. 3d 744, 750 (1990). "A fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter voluntarily accept or assume to accept the confidence, they cannot act so as to take advantage of the others' interests without their knowledge or consent." *Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg*, 216 Cal. App. 3d 1139, 1150 (1989).

Plaintiffs failed to sustain their burden that a fiduciary relationship existed between the parties. Plaintiffs' statement that a fiduciary relationship exists because of "admitted facts" directs this Court's attention to Plaintiffs' Separate Statement of Undisputed Facts ("PSSUF") No. 1. PSSUF No. 1 reads,

16

in its entirety: "There was a fiduciary relationship between Plaintiffs Class and Calcot Ltd. ("Calcot") because Calcot held monies for the benefit of Plaintiffs' Class." Plaintiffs supporting evidence cites to this Court's MTD Order, Calcot's Answer, Calcot's Points and Authorities in Support of its prior motion for summary judgment, and a declaration of Mr. Farley. Plaintiffs' statement of "fact" is a legal conclusion that is unsupported by legal authority or analysis and relies primarily on impermissible evidence.

Accordingly, Plaintiffs failed to carry their burden to establish the existence of a fiduciary relationship as a matter of law. The undisputed evidence demonstrates that there was a contractual relationship between the parties; however, Plaintiffs failed to sustain its burden to establish that a fiduciary relationship existed. Plaintiffs fail to support their legal conclusion with either fact or law.

Moreover, Plaintiffs failed to establish other essential elements of constructive fraud. As set forth above, the parties dispute material facts as to whether Calcot's acts constituted an impermissible non-disclosure. The parties dispute the accounting practices of Calcot. Those practices are subject to expert testimony and the parties have presenting conflicting opinions as to whether those accounting practices were proper. In addition, this Court notes that the parties have conducted no discovery as to the merits of Plaintiffs' claims. Thus, whether Calcot failed improperly to disclose the carrying costs to the growers is a disputed material fact.

**Accounting**

Plaintiffs' argument that they are entitled to an accounting reads:

> This Court held that plaintiffs' allegations state a claim for an accounting. (Citation omitted). Here, the facts supporting the accounting are admitted and/or have been established with this motion. (PSSUMF Issue Nos. 2(A) & 2(B). Plaintiffs are entitled to an accounting.

Pl. Memo., 16. Plaintiffs' PSSUMF Issue No. 2(A) reads: "There was a fiduciary relationship between Plaintiffs' Class and Calcot because Calcot held monies for the benefit of Plaintiffs' Class." For the following reasons, Plaintiffs' accounting argument fails.

An accounting is an action in equity wherein the plaintiff seeks an unliquidated amount that cannot be determined or fixed without an accounting. St James Church v. Superior Court, 135 Cal. App. 2d 352, 359 (1955). The duty to account is part of the general duty of all agents. Savage v. Mayer, 33

Cal. 2d 548, 551 (1948). "[B]asic principles of the law of fiduciaries place the burden to render an accounting on the fiduciary once the principal has shown that funds have been entrusted to the fiduciary and not paid over or otherwise accounted form." *In re Niles*, 106 F.3d 1456, 1462 (9th Cir. 1997).

The law of accounting relies on an agency or a fiduciary relationship. Plaintiffs, however, neglect to establish that either relationship exists. The paucity of Plaintiffs' argument, its conclusory nature, and a legal conclusion masquerading as fact are insufficient to establish that as a matter of law, Plaintiffs are entitled to an accounting.

**Breach of Contract**

Plaintiffs' "respectfully submit[] that the conclusion that Calcot breached the contracts with plaintiffs is the converse of the Order on Calcot's Motion For Summary Adjudication. Accordingly, all that is left for resolution is the determination of plaintiffs' damages arising from the breach of contract." Pl. Memo, 16. As discussed more fully above, this Court made no finding that Calcot breached the contract. Plaintiffs' argument seeks to avoid its burden to establish a question of fact; namely, whether Calcot's acts constituted a breach of the contract between Plaintiffs and Calcot. Accordingly, Plaintiffs' argument fails.

In addition, Calcot has presented evidence to dispute material facts as to whether its Palm Bluffs Development activities and related charges were authorized. A finder of fact may conclude that based on the evidence and circumstances, the charges were authorized or cotton-related. Pursuant to statute, an association may purchase real or personal property necessary for the conduct of its business. Cal. Food & Agr. Code, § 54176 ("An association may buy, hold, and exercise all privileges of ownership, over such real or personal property as may be necessary or convenient for the conduct and operation of, or incidental to, any of the business of the association."). Calcot argues that the Pinedale project was necessary for the conduct of its business. In addition, although neither the Articles of Incorporation, the Bylaws or the Marketing Agreement contain language that directly addresses Calcot's ability to engage in real estate development, there is a question of fact as to whether the real estate development was tied directly to the purpose of Calcot as stated in Calcot's Bylaws, Articles and as authorized by applicable statutory provisions. A finder of fact may conclude that the costs of maintaining the Pinedale property through 1997 were related to the handling of cotton, as there was a cotton warehouse on that property

at that time. A finder of fact may conclude that costs charged after 1997 were related to the handling of cotton, or were authorized as "costs of operating and maintaining CALCOT." Marketing Agreement, Paragraph 6. Accordingly, disputed issues of material fact exist on the breach of contract cause of action.

**Summary Adjudication**

In the alternative, Plaintiffs seek summary adjudication of issues of fact. Based on the evidence, as set forth above, this Court finds that summary adjudication pursuant to Fed. R. Civ. P. 56(d) (1), is appropriate, because these facts are not genuinely in issue:

A. The Pinedale property was used for cotton warehousing from 1951 through 1997.

B. Calcot charged former Calcot members with costs and expenses related to Calcot's Pinedale project.

**Calcot's Affirmative Defenses**

Plaintiffs fail to meet their burden to establish that they are entitled to summary judgment on Calcot's affirmative defenses. As set forth above, a party seeking summary judgment/adjudication bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp*, 477 U.S. at 323. The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and on which the non-moving party bears the burden of proof at trial. *Id*. at 322. Plaintiffs have failed to satisfy that burden on any of the 30 affirmative defenses.

Plaintiffs again impermissibly rely on this Court's prior orders. Plaintiffs argue that the "law of this case has established that Calcot was violating the unambiguous terms of its contract and exceeding its legal authority." Pl. Memo., p. 19, 20. Plaintiffs' argument is unsupported in law and fact, as explained more fully above. Accordingly, this Court rejects Plaintiffs arguments related to this Court's prior orders.

As to Plaintiffs' statute of limitations argument, Plaintiffs failed to meet their initial burden by "identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Plaintiffs argue that the

statute of limitations is not a defense, but a "claim against a fiduciary does not accrue until the fiduciary relationship has been terminated." Pl. Memo., p. 20. As discussed more fully above, however, Plaintiffs fail to establish that a fiduciary relationship existed between the parties.

Plaintiffs present no evidence to negate an essential element of Calcot's affirmative defenses, and fail to demonstrate that Calcot failed to make a showing of sufficient evidence to establish an essential element of the 30 affirmative defenses. According, Plaintiffs' motion to summary judgment as to Calcot's affirmative defenses 1-21 and 23-31 is denied.

## **CONCLUSION**

For the foregoing reasons, this Court:

1. DENIES Plaintiffs' broader summary adjudication motion on their claims for constructive fraud and deceit based on fiduciary relationship (third cause of action), accounting (fourth cause of action), and breach of contract (fifth cause of action), and on Calcot's 30 affirmative defenses; and

2. GRANTS Plaintiffs' summary adjudication on the following issues:
    a. The Pinedale property was used for cotton warehousing from 1951 through 1997.
    b. Calcot charged former Calcot members with costs and expenses related to Calcot's Pinedale project.

IT IS SO ORDERED.

**Dated:    February 16, 2010**            /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE