# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREWS FARMS, et al., | CASE NO. CV-F-07-0464 LJO DLB |
| Plaintiffs, | **ORDER ON DEFENDANTS' MOTION TO AMEND CLASS CERTIFICATION (Doc. 230)** |
| vs. | |
| CALCOT, LTD., ROBERT NORRIS, and EADIE AND PAYNE, | |
| Defendants. / | |

### INTRODUCTION

Defendants Calcot, Ltd. and Robert W. Norris (collectively "Calcot") and Eadie and Payne ("Eadie") (collectively "defendants") move to amend and clarify the definition of the class that was certified in this Court's August 5, 2009 Order on Plaintiffs' Renewed Class Certification Motion and Defendants' Motion for Summary Judgment ("Renewed Cert. Order") (Doc. 159) pursuant to Fed. R. Civ. P. 23(c)(1). In this motion, Calcot raises a number of issues with, and objections to, the certified class definition, including: (1) the "managing officers and agents" exclusion should be interpreted to exclude all former members of Calcot's Board of Directors; (2) Calcot's members in Arizona and New Mexico defeat typicality of the certified class; and (3) defunct entities and deceased individuals must be excluded from the class. Plaintiffs, while conceding some of the issues raised by Calcot, oppose the motion to argue that the class definition should not exclude former members of Calcot's board of directors, Calcot members in Arizona and New Mexico, or defunct entities and deceased individuals. For the following reasons, this Court GRANTS and DENIES in part Calcot's motion.

## BACKGROUND

### Factual

Plaintiffs assert ten causes of action against Calcot, a cotton marketing cooperative, Robert Norris, Calcot's President and Chief Executive Officer, and Eadie, Calcot's accounting firm. Proceeding on their second amended complaint ("SAC"), Plaintiffs assert ten causes of action: (1) fraud; (2) breach of fiduciary duty; (3) constructive fraud and deceit based on fiduciary duty; (4) accounting; (5) breach of contract; (6) fraud and deceit based on intentional misrepresentation of material fact; (7) negligent misrepresentation; and (8) - (10) violation of RICO, 18 U.S.C. §§1962(a),(b), and (c).

In its Renewed Cert. Order, this Court set forth the factual background as follows:

Calcot is a cotton marketing cooperative, organized under Chapter 1, Division 20 of the California Food and Agriculture Code. Members of Calcot enter into a Seasonal Marketing Pool by executing a Marketing Agreement. Paragraph 6 of the Marketing Agreement entered between Calcot and its members provides:

> CALCOT shall market cotton delivered by GROWER and there shall be deducted from the proceeds of sales thereof the cost of freight, insurance, storage, and any other expense incurred in handling, cotton, including all costs of operating and maintaining CALCOT, together with retains for the Cotton Revolving Fund and other fund or funds as provided for in the Bylaws concerning cotton.

Pursuant to the Marketing Agreement, Calcot advances the grower/members money when the grower delivers his or her cotton to Calcot's warehouse. The grower is paid an advance against the expected sales price of each bale of cotton ("Initial Advance"). As sales of the member's cotton are "booked" and receivables collected, a series of additional payments are made ("Progress Payments"), through the end of the fiscal year. At the end of the fiscal year, a final settlement is made, to pay the grower/member the remainder of any sums not paid previously.

Calcot also employs a seasonal per unit qualified retains system. In each crop year in which a grower participates as a member of Calcot, the grower/member pays qualified retains of $4.00 per bale of cotton delivered. This amount is reached by a "primary retain" of $3.00 per bale and a "secondary retain" of $1.00 per bale. The funds Calcot retains from its members are returned five years later. When returning the seasonal per unit retains, Calcot sends this message to its members: "Your investment in

Calcot, represented by these retains, has been used for working capital and for facilities as warehouses, offices, and cotton classing equipment. These vital elements of our total marketing program continue to work for your benefit."

Plaintiff Andrews Farms is a California general partnership, a cotton producer located in Merced County, California. Andrews Farms was a member of Calcot from 1978 through approximately 1985, 1996-97, and 1999-2001. In all of those years, Andrews Farms marketed and sold cotton as a member of the cooperative through the Calcot Seasonal Pool.

Plaintiff Greg Palla ("Mr. Palla"), d/b/a/ Greg Palla Farming Company, is a sole proprietorship and a cotton producer located in Kern County, California. Mr. Palla was a member of Calcot from 1980-2003 and in those years marketed and sold cotton as a member of the Calcot Seasonal Pool. Additionally, Mr. Palla was a member of Calcot's Board of Directors from 1992-2002, and served on Calcot's Audit Committee during that time.

Plaintiffs allege that Calcot abused the seasonal per unit retains system, and "saddled growers with secret retains in excess of $23,000,000 utilized to pay interests costs" for development of the Palm Bluffs property, costs unrelated to the handling and marketing of cotton. Since 1951, Calcot has owned land in Pinedale, an unincorporated county island located in northern Fresno, California. Calcot originally used the Pinedale location for cotton storage and warehousing. Plaintiffs allege that since 1980, Calcot "venture[d] into real estate development" which ended in "financial disaster." At that time, Calcot expanded its Pinedale property by acquiring adjacent properties as part of a speculative land development schedule. Calcot would demolish its cotton warehouse facilities and replace them with non-cotton related development on the 200+ acre area. This development in Pinedale became known as the Palm Bluffs Development. Calcot ceased its cotton warehousing operation at the Palm Bluffs location in 1997. Plaintiffs claim that Calcot has expended around $100,000,000 in developing and carrying the Palm Bluffs Development, and disguised $23,000,000 in its interest costs as interest costs incurred in the handling and marketing of members' cotton. Plaintiffs allege that Calcot, with the help of Eadie, improperly concealed and charged costs related to the Palm Bluffs Development to all members under the Marketing Agreement. Plaintiffs assert that charges related to the Palm Bluffs development were unauthorized, as they were unrelated to the handling of cotton.

**Procedural**

This is the third motion related to class certification in this action. Plaintiffs initially moved to certify a class action on March 3, 2009. On May 1, 2009, this Court denied without prejudice Plaintiffs' motion. Order on Plaintiffs' Class Certification Motion ("Class Cert. Order") (Doc. 113) for the following reasons:

> A conflict of interest exists between the interests of the class representatives–both former Calcot members–and the interests of current and future Calcot members...[S]ignificant monetary damages recovered by Plaintiffs may be paid largely by current and future Calcot members. Because former Calcot members do not bear that burden, they have an interest in maximizing the damages award. Conversely, current and future members of Calcot, who may have their damages awards offset by bearing the financial burden of paying for any damages awarded, may be interested to present Calcot's funds, even at the expense of litigating their claims. Because of this inherent conflict of interest, the class representatives cannot represent adequately the interests of current and future Calcot members.

*Id*. at 13. The Court found that in this context, "the proper solution is to create subclasses of persons whose interests are in accord." *Id*. at 14 (quoting *Payne v. Travenol Labs., Inc.*, 673 F.2d 798, 812 (5th Cir. 1982)). The Court ordered Plaintiffs either to renew the motion for class certification or to file a statement that Plaintiffs no longer pursue class certification. *Id*. at 15.

Plaintiffs renewed the motion on May 21, 2009 and filed an amended renewed class certification motion on May 29, 2009. Defendants opposed Plaintiffs' amended renewed class certification motion, and Calcot moved for summary judgment. In its Renewed Class Cert. Order, this Court denied Calcot's summary judgment motion and granted Plaintiffs renewed class certification.[1] In the renewed certification motion, Plaintiffs excluded current and future members of Calcot and included only past Calcot members who marketed their cotton in the seasonal pool from January 1, 1983 through May 21, 2009. The proposed class included two specific exclusions. First, "persons or entities who, as of May 21, 2009, were then presently marketing their cotton with Calcot" were specifically excluded. Second, "present and former managing officers and agents" were excluded.[2] On August 5, 2009, this Court granted Plaintiffs' renewed class certification motion, and certified Plaintiffs' proposed class.

---

[1] The Court also denied Plaintiffs' subsequent summary judgment motion on February 16, 2010.

[2] The exclusion of present and former managing officers and agents was omitted inadvertently in this Court's Renewed Cert. Order, as discussed more fully below.

4

Eight months later, the "parties still do not agree on the meaning of the certified class definition, and are still discussing threshold issues of class definition." Calcot Memo., 1. Accordingly, Calcot moved to alter or amend the certified class, raising a number of issues. Eadie joined Calcot's motion. Plaintiffs opposed the motion on May 12, 2010, but also proposed to clarify and amend the class definition. Calcot and Eadie filed separate replies on May 25, 2010. Plaintiffs filed a sur-reply on May 27, 2010. Having considered the parties' arguments and the record, this Court finds this motion suitable for a decision without a hearing. On the basis of good cause, this Court vacates the June 8, 2010 hearing on this motion, pursuant to Local Rule 230(g), and issues the following order.

## ANALYSIS & DISCUSSION

### Standard of Review

"An order than grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). This Court retains broad authority to modify or withdraw certification at any time where it appears the class definition is inappropriate or inadequate. *Armstrong v. Davis,* 275 F.3d 849, 871 (9th Cir. 2001). "Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation. For such an order, particularly during the period before any notice is sent to members of the class, 'is inherently tentative.' [citations]. This flexibility enhances the usefulness of the class action device; actual, not presumed, conformance with Rule 23(a) remains, however, indispensable." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

In this action, two subsequent developments in this litigation warrant reconsideration of this Court's Renewed Cert. Order. First, subsequent to this Court's order, the Ninth Circuit clarified Fed. R. Civ. P. 23 ("Rule 23") standards in *Dukes v. Wal-Mart Stores, Inc.*, – F.3d –, 2010 WL 1644259 (9th Cir. 2010). Second, the plaintiffs subsequent summary judgment motion, and the parties continued inability to agree on the current class definition, underscore a conflict between members of Calcot's Board of Directors during the relevant time period ("former board members"), and those class members who did not serve on the Board of Directors during the relevant time period ("non-board members"). Accordingly, this Court reconsiders class certification in light of these developments in law and fact.

**Class Definition**

In its Renewed Cert. Order, this Court certified the class as follows:

> All persons or entities who, as of May 21, 2009, were former members of Calcot, who marketed their cotton in the Calcot Seasonal Pool, who have taken Advances from Calcot upon delivering their cotton to Calcot and have had interest deducted from their payments for such cotton and/or deductions and or charges for such secret losses for the costs of operating and maintaining Calcot from the proceeds of their cotton sales at any and all times since January 1, 1983 or otherwise had interest costs of the Palm Bluff Development deducted from their settlements for the sale of cotton. Specifically excluded from this definition are persons or entities who, as of May 21, 2009, were then presently marketing their cotton with Calcot.

In this motion, Calcot points out that this Court inadvertently excluded the final sentence from Plaintiffs' proposed class in its class definition, which reads: "Specifically excluded from the Plaintiff Class are Calcot's present and former managing officers and agents." The parties agree that the omission went unnoticed from the time the August 5, 2009 order was filed until Plaintiffs discovered the omission on March 10, 2010. Plaintiffs' discovery of the omission was prompted by the parties' continued dispute over the scope of the term "managing officers and agents." Moreover, all parties agree that they had been proceeding as if the inadvertently omitted exclusion was included in the certified class definition, and that they view the omission as unintentional.

The omission of the sentence was inadvertent. Calcot did not oppose the exclusion in its opposition to Plaintiffs' renewed class certification motion, and Plaintiffs consistently proposed the exclusion in their class definition. This Court s addressed specific concerns with the proposed class definition in its Class Cert. Order and Renewed Class Cert. Order–the inadvertently omitted sentence was unrelated to those issues. Accordingly, this Court CLARIFIES that the class certified in its Renewed Class. Cert. Order is as follows:

> All persons or entities who, as of May 21, 2009, were former members of Calcot, who marketed their cotton in the Calcot Seasonal Pool, who have taken Advances from Calcot upon delivering their cotton to Calcot and have had interest deducted from their payments for such cotton and/or deductions and or charges for such secret losses for the costs of operating and maintaining Calcot from the proceeds of their cotton sales at any and all times since January 1, 1983 or otherwise had interest costs of the Palm Bluff Development deducted from their settlements for the sale of cotton. Specifically excluded from this definition are persons or entities who, as of May 21, 2009, were then presently marketing their cotton with Calcot.
>
> Specifically excluded from the Plaintiff Class are Calcot's present and former managing officers and agents.

**Parties' Proposed Class Definitions and Issues Raised**

Defendants propose the following revised class definition:

All persons or entities who, as of May 21, 2009, were former members of Calcot who marketed their cotton with Calcot in the Seasonal Pool at any time between January 1, 1983 up to and including August 31, 2004 (the "Class Period"). Specifically excluded from this definition are: (1) any person or entity' [sic] whose authorized representative served as a member of Calcot's Board of Directors and/or served as an officer of Calcot at any time during the Class Period; (2) any persons or entities who as of May 21, 2009, were then presently marketing or selling their cotton or other products with Calcot; (3) any persons or entities who fall within this definition but since May 21, 2009, have rejoined Calcot to market or sell their cotton or other products with Calcot; (4) any corporate or partnership entities that are defunct as of the date of class notice; (5) any persons or entities whose residence is in Arizona or New Mexico; and (6) any persons who are deceased as of the date of class notice.

Plaintiffs propose the following revised class definition:

All persons or entities who, as of May 21, 2009, were former members of Calcot who marketed their cotton with Calcot in the Seasonal Pool at any time between January 1, 1983 up to and including August 31, 2004. Specifically excluded from this definition are: 1) persons or entities who as of May 21, 2009, were then presently marketing or selling their cotton or other products with Calcot; and, 2) person or entities who fall within this definition but since May 21, 2009 have rejoined Calcot to market or sell their cotton or other products with Calcot.

Considering the proposed class definitions, concessions, and arguments of the parties, Calcot's motion has narrowed to four issues.  First, whether former board members should be excluded from the class definition.  Second, whether the class definition should exclude defunct corporate or partnership entities.  Third, whether Calcot members who are residents of Arizona and New Mexico should either be excluded, or divided into sub-classes, because of conflicts of law between California, Arizona, and New Mexico.  Finally, whether deceased persons should be excluded from the class definition.  This Court considers each issue below.

**Calcot's Former Board Members**

The parties dispute the scope and meaning of the following exclusion, included in the class definition approved by this Court's Renewed Cert. Order: "Specifically excluded from the Plaintiff Class are Calcot's present and former managing officers and agents."

Calcot interprets the phrase to exclude all former board members during the Class Period, including named plaintiff Mr. Palla. Calcot argues that former board members were "managing agents" because of the significant degree of managerial discretion the former board members exercised with

7

1  regards to the Pinedale development. In addition, defendants argue that former board members should
2  be excluded from the class because the facts, law, and interests of the former board members conflict
3  with the non-board members who fit the class definition. Accordingly, Calcot requests this Court to
4  define the scope of the exclusion and to exclude specifically all former board members from the class.

5  Plaintiffs argue that the "managing agents and officers" exclusion was "very narrow" and
6  "intended only to apply to those, such as the CEO or others whose individual actions established their
7  corporate authority." Plaintiffs contend that the exclusion has no application to Mr. Palla, or any former
8  board member, as individual board members had no authority. Morever, Plaintiffs assert that former
9  board members were also misled by those who concealed the facts about the alleged improper
10 accounting and charges related to the carrying costs of the Pinedale project. Plaintiffs propose this Court
11 to remove the exclusion from the class definition.

12 In resolving this motion, the Court points out that Plaintiffs' claims fall into two categories.
13 First, Plaintiffs assert that charges related to the Pinedale project were concealed improperly and charged
14 fraudulently to members of Calcot's seasonal pool. Second, Plaintiffs allege that charges related to the
15 development of real estate were unauthorized, because they are unrelated to the handling of cotton.

16 Plaintiffs' arguments focus on the first category of claims. Plaintiffs contend that Mr. Palla is
17 an adequate representative, and common questions of law and fact exist, because former board members,
18 including Mr. Palla, were also misled by the Calcot's senior management and Eadie. For example, Mr.
19 Palla testified in deposition that he was misled affirmatively by Calcot's former CEO and Eadie when
20 he was told that the costs associated with Palm Bluffs were capitalized. Plaintiffs concede that it "is
21 possible that some of the Chairmen or Vice Chairmen knew [about the costs and charges], but that is
22 speculation. To varying degrees, they appear to have been deceived by Calcot's senior management."
23 Calcot presents no evidence at this stage (merits-based discovery has not yet begun) to oppose Plaintiffs'
24 position that all members of the class, including members of Calcot's former board members, were
25 misled.

26 In considering the facts presented and controlling pleading document, this Court finds that there
27 may be differences of fact between former board members and non-board members on the concealment
28 issue. For example, Plaintiffs allege in the SAC:

8

> Further, and also in the alternative, CALCOT has a statutory duty to furnish its members (shareholders) with an annual report. (California Corp. Code §1501, subd. (a).) [sic] Furnishing a report that is false, misleading, or improperly prepared is a breach of duty owned to members (shareholders) and prospective members (shareholders). At all time [sic] relevant to the allegations, CALCOT prepared annual reports but circulated them only to members of the board of directors. Annual reports were circulated to board members, but only temporarily–they were purposefully withdrawn thereby precluding close scrutiny by members and prospective members.

SAC, ¶64. Thus, at least one question of fact is uncommon as to whether the accounting was concealed to the former board members and non-board members.

Defendants' arguments focus on the second category. Defendants argue that significant questions of fact and law differ between former board members and non-board members as to whether Calcot's activities unrelated to cotton-handling were authorized. Defendants have presented evidence that former board members, including Mr. Palla, were aware of and approved the real estate activities in Pinedale. To that end, defendants argue that including Mr. Palla and former board members in the class definition defeats the requirements of Rule 23.

In light of the development in the law and the record, this Court reconsiders the issues related to whether a class definition that includes Mr. Palla and former board members meets the requirements of Rule 23.

### Rule 23 Requirements

A class for the violations alleged in the complaint must satisfy Rule 23. The burden is on the party seeking to maintain the class action to establish a prima facie showing of each of the elements of Rule 23 (a) prerequisites and the appropriate Rule 23(b) ground for a class action. Fed. R. Civ. P. 23(b). Pursuant to Rule 23(a), all class actions must meet four prerequisites: (1) the impracticability of joining all members ("numerosity"); (2) the existence of common questions of law or fact ("commonality"); (3) typicality of the claims and defenses of the parties with respect to the proposed class ("typicality"); and (4) adequate representation of the proposed class by the parties before the Court ("adequacy of representation"). Fed. R. Civ. P. 23(a); *Stanton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). In addition, the Court must find that at least one of the following three conditions of Rule 23(b) are satisfied:

> (1) the prosecution of separate actions would create a risk of:

>   (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications;
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or
>
> (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b).

Before certifying a class, the Court must conduct a "rigorous analysis" to ensure that the four requirements of Rule 23(a) are met and that the class fits within one of the three categories of Rule 23(b). *Falcon*, 457 U.S. at 161. Plaintiffs can meet this burden by "providing the Court with a sufficient basis for forming a 'reasonable judgment' on each requirement." *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975), *cert. denied*, 429 U.S. 816 (1976). The movant's burden is to produce evidence by affidavits, documents or testimony establishing each Rule 23 requirement. A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *Falcon*, 457 U.S. at 161; *see also, In re Initial Public Offering Secur. Litig.*, 471 F.3d 24, 33 (2nd Cir. 2006) (Rule 23 requirements must be met, not just supported by "some evidence.").

The Ninth Circuit recently clarified the "proper standards governing a district court's adjudication of a Rule 23 motion for class certification." *Dukes*, 2010 WL 1644259, *16. In *Dukes*, the court explained:

> First, when considering a class certification under Rule 23, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims. It is important to note that the district court is not bound by these determinations as the litigation progresses. Second, district courts may not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements. Relatedly, a district court performs this analysis for the purpose of determining that each of the Rule 23 requirements has been satisfied. Third, courts must keep in mind that different parts of Rule 23 must require different inquiries. For example, what must be satisfied for the commonality inquiry under Rule 23(a)(2) is that plaintiffs establish common *questions* of law and fact, and that answering those questions is the purpose of the merits inquiry, which can be addressed at trial and at summary judgment. Fourth, district courts retain wide discretion in class certification decisions, including the ability to cut off discovery to avoid a minitrial on the merits at the certification stage. Fifth, different types of cases will result in diverging frequencies with which the district court will properly invoke its discretion to abrogate discovery. As just one example, we would expect a district court

10

> to circumscribe discovery more often in a Title VII case than in a securities class action resting on a fraud-on-the-market theory, because the statistical disputes typical to Title VII cases often encompasses the basic merits inquiry and need not be proved to raise common questions and demonstrate the appropriateness of class resolution. Plaintiffs pleading fraud-on-the-market, on the other hand, may have to establish an efficient market to even raise common questions or show predominance.

*Id*. With these clarifications in mind, the Court considers the parties' arguments in this motion to amend and clarify the class definition.

**Rule 23(a) Requirements**

*Adequacy of Representation*

The person representing the class must be able "fairly and adequately to protect the interests" of all members in the class. Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes*, 2010 WL 1644259, *33; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978). "Examination of potential conflicts of interest has long been an important prerequisite to class certification." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). A representative is not adequate if that party is antagonistic or has conflicts with other potential class members. *Amchen Products, Inc. v. Windsor*, 521 U.S. 591, 626 (1997). Because the parties do not dispute the adequacy of class counsel, the Court's analysis focuses on the adequacy of the class representatives.

Calcot argues that Mr. Palla is an inadequate representative, because his interests–and the interests of all former board members–conflict with the non-board member class members. Calcot contends that the former board members' participation in the formulation of Calcot's corporate policy on the disposition of the Pinedale plant, allegedly in violation of Paragraph 6 of the Marketing Agreement, is antagonistic to the interests of the non-board member class members. Calcot asserts that Mr. Palla cannot vigorously represent the interests of the class while defending his own actions as a former board member.

Eadie concurs with Calcot that Mr. Palla, as a former board member, has a conflict of interest with non-board members. Eadie explains that Mr. Palla, as a class representative, is "left in a precarious and inconsistent position–justifying his own conduct on the board to his fellow class members."

Because Plaintiffs claim that Calcot's governing documents prohibited any real estate activity, Eadie argues that Mr. Palla, as a former director, has an irreconcilable conflict because he cannot adequately represent non-board members without thinking about protecting his own interests as a former board member.

Plaintiffs largely ignore this conflict. Plaintiffs attempt to refocus the discussion to the first category of claims–the concealment of the charges–to argue that these costs were concealed from all class members, including former board members. As set forth above, there is a question of fact as to whether the former board members knew about the charges. In addition, there is a question of law as to whether former board members are presumed to know about the accounting of the corporation. Nevertheless, and most importantly, Plaintiffs do not oppose successfully defendants' points about the conflict as it relates to the issue of whether Calcot's real estate activities were authorized.

This Court agrees that an irreconcilable conflict of interest exists between former board members and non-board members. Plaintiffs' claims that Calcot's real estate activities were unauthorized creates a conflict of interest between former board members–who authorized the real estate activities–and non-board members. Accordingly, this Court grants Calcot's motion to amend the class definition and to clarify that the "managing agents and officers" exclusion specifically excludes former board members. *See, e.g., Radell v. Towers Perrin*, 172 F.R.D. 317, 320-21 (N.D. Ill. 1997) (holding that former board member is an inappropriate class representative where a breach of fiduciary duty is involved, and plaintiffs challenge the actions of the board).

"Ordinarily, if a court discerns a conflict like the one in this case, the proper solution is to create subclasses of persons whose interests are in accord." *Payne,* 673 F.2d at 812. This Court does not "'bear the burden of constructing subclasses' or otherwise correcting Rule 23(a) problems; rather, the burden is on Plaintiffs to submit proposals to the court." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1239 (9th Cir. 2001) (quoting *United States Parole Comm. v. Geraghty*, 445 U.S. 388, 408 (1980)). In this Court's discretion, and in the interest of due process, this Court shall certify a class to exclude the former board members. However, the Court will allow Plaintiffs the opportunity to submit a further motion to propose subclasses. *See Geraghty*, 445 U.S. at 408 (after denying class certification, a district court must give the representative of the plaintiff an opportunity to propose subclasses, but has no obligation to

construct them itself); *see also*, Fed. R. Civ. P. 23(c)(4),(5), and (d).

*Commonality and Typicality*

Because one of the class representatives is inadequate, class certification is defeated for the subclass of former board members. Nevertheless, the Court points out that the subclass of former board members also lacks commonality and typicality with non-board members.

To certify a class action, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). A "common nucleus of operative facts" is usually enough to satisfy the commonality requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993). Although Rule 23(a)(2) requires that there be common questions of fact, factual differences are not fatal if common questions of law exist. *Like v. Carter*, 448 F.3d 798 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045 (1972). Thus, Rule 23(a)(2) does not require that every or all questions of fact or law be common or identical. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). However, where the claims of the class are so factually and legally distinct as to be completely separate, commonality is absent. *In re Life USA Holding*, 242 F.3d 136, 144-47 (3rd Cir. 2001).

This Court previously ruled that Plaintiffs satisfy the commonality requirement of Rule 23(a)(2):

> Plaintiffs identify numerous legal and factual issues common to the proposed members of the class. Defendants do not dispute that the legal issues are common. Instead, defendants argue that Plaintiffs lack commonality based on factual diversions. Factual differences are not fatal, however, if common questions of law exist. *Like*, 448 F.3d 798. Here, Plaintiffs have demonstrated that class members share legal questions, even if by divergent facts. In addition, proposed class share a common core of salient facts and the divergent facts are minimal. Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied. *See Hanlon*, 150 F.3d at 1019-20.

Class Cert. Order, 8:28-9:7. In the previous motions, Defendants had argued that Mr. Palla, representing former board members, had divergent factual issues. This Court found commonality, over Defendants' objections, for two reasons. First, the Court found that "[f]actual differences are not fatal...if common questions of law exist." *Id*. Second, the Court found that the "proposed class share a common core of salient facts and the divergent facts are minimal." *Id*.

Upon reconsideration, this Court finds that the core of salient facts are uncommon between former board members, represented by Mr. Palla, and non-board members who meet the class definition. In previous motions, this Court relied on Plaintiffs' pleading to assume the truth of the allegations

13

contained therein. In considering the merits of Plaintiffs' claims, however, under the *Dukes* standard, this Court finds that evidence has been presented that former board members approved the activities challenged by Plaintiffs; to wit, former board members approved the real estate activities that Plaintiffs allege were unauthorized. Evidence demonstrates that Mr. Palla, as a former director, was involved in the sale of the Pinedale property, an activity Plaintiffs allege to be unauthorized.[3] This factual distinction is significant, as both parties have relied on Calcot's Articles of Incorporation, Calcot's Bylaws, Paragraph 6 of the Marketing Agreement, and California Food and Agriculture Code to argue that charges related to the Pinedale development were either authorized or unauthorized as a matter of law. This difference in fact is significant, as both parties argue that the determination of whether the real estate activities were authorized dispositive of Calcot's liability in this action. Thus, questions of fact, as they relate to former board members and non-board members, diverge sharply in a significant area.

Additionally, questions of law applicable to former board members and non-board members differ. Although Plaintiffs argue that former board members had no authority, corporate law and Calcot's Bylaws suggest otherwise. Pursuant to Cal. Corp. Code 300, "the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board...the business and affairs of the corporation shall be managed and all corporate powers shall be exercised under the ultimate direction of the board." Article X of Calcot's Bylaws provides that Calcot's Board of Directors "exercise all of the powers of the Association, and without prejudice to or limitation upon their general powers, it is hereby expressly provided that the Board shall have and they are hereby given, full power and authority, in their unlimited discretion" with respect to matters necessary to Calcot's governance.

Moreover, former board members' claims lack typicality. Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with

---

[3] For example, corporate minutes of the February 19, 1998 meeting of Calcot's Board of Directors read: "Upon a motion by Director Palla, and seconded by Director Benson, it was unanimously agreed that the board of directors of Calcot, Ltd. reaffirm the development plan which is presently in place and cause the Mello-Roos bonds to be issued." The sale of the Mello-Roos bonds were to finance infrastructure improvements in Pinedale, as provided in a development agreement between Calcot and the City of Fresno.

those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. This Court previously ruled that the:

> class representatives' claims are typical of the proposed class members. The representatives, and putative class members, claim that Calcot fraudulently charged interest related to the Palm Bluffs Development, in breach of the Marketing Agreement, and that such interest charges were made possible by Eadie's misrepresentations. Plaintiffs demonstrate the "predominance of common questions over individual ones." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Accordingly, the typicality requirement of Rule 23(a)(2) is satisfied.

Class Cert. Order, 10:9-15. Calcot points out that under the circumstances, former board members' involvement in the Calcot's real estate activities makes their questions of fact and law uncommon and atypical to other class members. Calcot suggests that involvement aligns that former board members with the defendants in some circumstances.

Mr. Palla, as a class representative, does not satisfy typicality as he would be subject to defenses not typical of the class. Moreover, whether and to what extent each former board members was involved in the alleged activities, and what each director knew about the accounting of the carrying costs, raises issues of fact and law as to each director. Based on these considerations, the Court finds that there is a predominance of individual questions, rather than common questions, as to the former board members.

### Calcot Members in Arizona and New Mexico

Calcot argues that class members who live in Arizona, New Mexico and Texas defeat the typicality prong of the Rule 23 analysis. Calcot contends differences between Texas and California corporate laws require this Court to exclude all class members who live outside of California. Calcot's choice of law argument focuses exclusively on Texas' delayed discovery rule; however, residents of Texas are no longer included in the class definition. To address the issue, Plaintiffs propose to shorten the class period, and to include only those former members of Calcot who marketed their cotton with Calcot in the Seasonal Pool at any time between January 1, 1983 up to and including August 31, 2004. Calcot expanded into Texas after August 31, 2004. Because Texas law is inapplicable, and because this Court has ruled to exclude former board members, Calcot's proposed exclusion is moot. This Court makes no further determination on the choice of law arguments raised by Calcot.

### Defunct Entities and Deceased Persons

Calcot contends that all deceased persons and defunct or dissolved entities should be excluded

specifically from the class definition because they are incapable of suing or being sued as an individual or corporate body. Plaintiffs counter that Calcot fails to cite legal authority to support its position that deceased persons or defunct entities should be excluded specifically in a class definition. Plaintiffs point out this problem arises due to the length of the alleged fraud, and argue that defendants should not profit from their alleged wrongdoing.

This Court agrees with Plaintiffs that a two-step notice requirement addresses this issue. After the liability phases of this action, defendants may raise further issues related to the members of the class and whether they can recover damages. Calcot's argument are unripe.

## CONCLUSION

For the foregoing reasons, this Court:

1. GRANTS in part and DENIES in part defendants' motion (Doc. 230);

2. CERTIFIES an amended class as follows:

All persons or entities who, as of May 21, 2009, were former members of Calcot who marketed their cotton with Calcot in the Seasonal Pool at any time between January 1, 1983 up to and including August 31, 2004 (the "Class Period"). Specifically excluded from this definition are: (1) any person who served as a member of Calcot's Board of Directors and/or served as an officer of Calcot at any time during the Class Period; (2) any persons or entities who as of May 21, 2009, were then presently marketing or selling their cotton or other products with Calcot; and (3) any persons or entities who fall within this definition but since May 21, 2009, have rejoined Calcot to market or sell their cotton or other products with Calcot.

3. VACATES the June 8, 2010 hearing on this motion; and

4. ORDERS Plaintiffs to file and serve, no later than June 9, 2010, a motion to add the former board members as a subclass, if any. Such motion must be accompanied by points and authorities and shall be set for hearing according to this Court's local rules. Plaintiffs are under no obligation to file the motion, and the parties may proceed with class definition certified in this order.

IT IS SO ORDERED.

**Dated:   May 28, 2010**             /s/ Lawrence J. O'Neill
                                      UNITED STATES DISTRICT JUDGE